**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

WADE GREELY LAY,          )
                                          )
            Petitioner,        )
                                          )
v.                                     )       **Case No. 08-CV-617-TCK-PJC**
                                          )
ANITA TRAMMELL, Warden,      )
Oklahoma State Penitentiary,       )
                                          )
           Respondent.       )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner, Wade Greely Lay (Lay), is an Oklahoma death row prisoner, currently incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma. In his petition (Dkt. # 18), Lay, who appears through counsel, alleges that he "is confined by the State of Oklahoma under a first degree murder conviction and sentence of death in violation of the laws and Constitution of the United States." Id. at 1. Respondent filed a response (Dkt. # 39) to the petition, and Lay filed a reply (Dkt. # 47) to the response. Lay also filed a "renewed motion for evidentiary hearing" (Dkt. # 144). In response, Respondent filed a "motion to strike, and alternatively, response to Lay's renewed motion for evidentiary hearing" (Dkt. # 147). Lay filed a reply (Dkt. # 152). The state court record has been produced.[1] The Court considered all of these materials in reaching its decision. For the reasons discussed below, the Court concludes the petition shall be denied. In addition, Lay's renewed motion for evidentiary hearing shall be denied and Respondent's motion to strike shall be denied.

---

[1]      References to the transcript of the trial shall be referred to as "Tr. Trans. Vol. __ at __." The original state court record for Tulsa County District Court, Case No. CF-2004-2320, shall be identified as "O.R. Vol. ___ at ___." Motion hearings shall be identified as "M. Trans. (date) at ___."

# BACKGROUND

## I. Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct. Following review of the record, including the trial transcripts and evidence, this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals (OCCA) in its order resolving Lay's direct appeal is adequate and accurate. Therefore, the Court adopts the following factual summary as its own:

> The facts in this case are largely undisputed. Lay does not challenge his convictions but only the sentences he received for them. On May 24, 2004, Wade Lay and his son, Chris, entered the MidFirst bank in Tulsa to rob the bank to fund the purchase of guns to avenge the United States Government's attacks on Ruby Ridge and the Branch Davidians. The Lays believed that the United States Government had become tyrannical and that they had to start a patriotic revolution as was done by America's founding fathers.
>
> The Lays entered the bank armed, wearing ski masks and gloves. Christopher Lay confronted bank employee Brian Easlon and ordered him to the ground. When bank security guard Kenneth Anderson entered the lobby, a gun battle erupted wounding the Lays and killing Anderson. The Lays, without obtaining any money, fled across a field to their truck. Both were apprehended later that day and were taken to the hospital. At trial, both Lays admitted guilt but asserted that their actions were driven by a necessity for the greater good of the country.

Lay v. State, 179 P.3d 615, 619 (Okla. Crim. App. 2008) (hereinafter Lay). Additional facts necessary for a determination of Lay's claims will be set forth in detail throughout this opinion.

## II. Procedural History

In Tulsa County District Court, Case No. CF-2004-2320, Lay was charged jointly with his son and co-defendant, Christopher Lay (Chris), with First Degree Murder, or in the alternative, Felony Murder, of Kenneth Anderson (Count I), and Attempted Robbery With a Firearm (Count II). (O.R. Vol. I at 93-94). On October 25, 2004, the State filed a Bill of Particulars against both Lay,

id. at 89-90, and Chris, id. at 91-92, seeking the death penalty on the first degree murder charge, and alleging the following three (3) aggravating circumstances: (1) the defendant knowingly created a great risk of death to more than one person; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

Lay and Chris were tried jointly by jury. Lay exercised his constitutional right to self-representation and proceeded pro se at trial. During trial, Lay presented his defense, summarized by OCCA as follows:

> Through his testimony and that of his son, Lay was allowed to present his defense: he attempted to rob the bank to obtain money to buy guns to avenge perceived government atrocities. In a nutshell, the Lays claimed they were trying to defend the freedoms guaranteed by the founding fathers in the Constitution by overthrowing the tyranny of our current government. Moreover, the Lays argued that they never intended for anyone to be hurt in the attempted robbery but were prepared in the event of confrontation.

Lay, 179 P.3d at 622. Lay's trial was held September 19-28, 2005. At the conclusion of the guilt/innocence phase, the jury found Lay guilty of both counts.[2] (O.R. Vol. II at 362-63). At the conclusion of the sentencing phase, the jury found the existence of all three alleged aggravating circumstances, and recommended that Lay receive a sentence of death as to Count I. Id. at 359-60. As to Count II, the jury recommended a sentence of twenty-five (25) years imprisonment. Id. at 361.

---

[2] The jury also found Chris guilty of both counts. (O.R. Vol. II at 354-55). On October 10, 2005, the trial judge sentenced Chris in accordance with the jury's recommendations to life imprisonment without the possibility of parole as to Count I and to twenty-five (25) years imprisonment as to Count II, to be served consecutively. (O.R. Vol. III at 434-40). At trial, attorneys Robert R. Nigh, Jr., and Kevin Adams represented Chris.

On October 24, 2005, the trial judge sentenced Lay in accordance with the jury's recommendations. (O.R. Vol. III at 475-76, 480-83).

On October 21, 2005, Lay's appellate counsel, Stephen James Greubel, filed a motion for new trial and request for evidentiary hearing. (O.R. Vol. III at 444-53). In his motion, Lay asserted that his substantial rights to a fair trial had been violated as a result of juror misconduct. Id. at 446-50. On December 1 and 15, 2005, the trial court held a hearing on the motion for new trial. At the conclusion of the hearing, the trial judge denied the motion. (M. Tr. 12/15/05 at 65).

Lay appealed his convictions and sentences to the OCCA in Case No. D-2005-1081. Represented by attorney Greubel of the Tulsa County Public Defender's Office, Lay raised the following fourteen (14) propositions of error:

*Part A: Assistance of counsel claims*

Proposition I: A defendant in a capital criminal trial has no constitutional right to proceed without counsel during the penalty phase of that trial.

Proposition II: The Sixth, Eighth, and Fourteenth Amendments require that a defendant who represents himself in a capital criminal trial be provided with a qualified second chair/standby counsel to assist him with the penalty phase of that trial; alternatively, the district court abused its discretion in failing to afford second chair/standby counsel when Wade Lay requested such assistance.

Proposition III: In this particular capital criminal trial the district court's inquiry into Wade Lay's waiver of his Sixth and Fourteenth Amendment right to counsel was inadequate to support the conclusion that Wade Lay voluntarily and intelligently elected to forego representation by counsel during the penalty phase of his trial.

*Part B: Claims arising from penalty phase errors*

Proposition IV: The Eighth and Fourteenth Amendments require the jury to afford each defendant separate and independent consideration during the penalty phase.

| Proposition V: | The victim impact testimony violated Wade Lay's Eighth and Fourteenth Amendment rights. |
|---|---|
| Proposition VI: | Failure to instruct the jury that it must find aggravating circumstances outweigh mitigating factors beyond a reasonable doubt violates the Supreme Court's holding in <u>Ring v. Arizona</u>. |
| Proposition VII: | The trial court failed to instruct the jury in accordance with OUJI CR2d 4-77 that in regard to those aggravating circumstances proved by circumstantial evidence "all of the facts and circumstances, taken together, must be inconsistent with any reasonable theory or conclusion other than the existence of the aggravating circumstance[s]." |
| Proposition VIII: | Oklahoma's "continuing threat" aggravating circumstance is unconstitutional. |

*Part C: Juror misconduct claims*

| Proposition IX: | Internal juror misconduct deprived Wade Lay of his Sixth and Fourteenth Amendment rights. |
|---|---|
| Proposition X: | External juror misconduct deprived Wade Lay of his Sixth and Fourteenth Amendment rights. |
| Proposition XI: | The district court's limited inquiry of prospective jurors during voir dire was inadequate to allow Wade Lay to intelligently exercise his peremptory challenges, and therefore violated Wade Lay's Sixth and Fourteenth Amendment rights. |

*Part D: Mandatory sentence review*

| Proposition XII: | The sentence of death was imposed under the influence of passion, prejudice and/or other arbitrary factors. |
|---|---|
| Proposition XIII: | The evidence does not support the jury's finding of a statutory aggravating circumstance. |
| | A. The evidence does not support the jury's finding that Wade Lay created a great risk of death to more than one person. |
| | B. The evidence does not support the jury's finding that Wade Lay committed murder for the purpose of avoiding arrest or prosecution. |

C. The evidence supports the jury's factual finding that Wade Lay is a continuing threat to society, but the aggravating circumstance itself is unconstitutional.

D. In the event this court invalidates one or more of the aggravating circumstances, it must remand the case for a new trial of the penalty phase rather than re-weigh the remaining aggravating circumstances against the mitigating factors.

*Part E: Cumulative error*

Proposition XIV: Wade Lay was deprived of his Fifth, Eighth and Fourteenth Amendment rights as a result of the accumulated errors presented herein.

See Brief of Appellant in OCCA, Case No. D-2005-1081. On January 8, 2007, appellate counsel filed a motion to supplement opening brief with Appellant's pro se supplement brief. See Dkt. # 39-3. In his pro se supplemental brief, Lay argued, inter alia, that he was deprived of his constitutional right to present his necessity defense. See Pro Se Supplemental Brief of Appellant on Direct Appeal, filed in Case No. D-2005-1081. On February 12, 2008, the OCCA rejected all of Lay's claims, including the claims raised in his pro se supplemental brief, and affirmed his convictions and sentences. Lay, 179 P.3d at 625.

Lay filed his first application for post-conviction relief on May 30, 2008. Represented by Oklahoma Indigent Defense System (OIDS) attorneys Vicki Ruth Adams Werneke and Bobby G. Lewis, he presented the following three (3) grounds for relief:

Proposition One: Mr. Lay's constitutional rights to a fair and reliable capital proceeding were violated when he was allowed to proceed pro se while suffering with a severe delusional disorder and while more than likely incompetent to stand trial.

Proposition Two: The introduction of the victim impact testimony violated Mr. Lay's constitutional right to a fair sentencing proceeding.

<table>
<tr><td>Proposition Three:</td><td>Failure to provide counsel a copy of the preliminary hearing transcript has deprived Mr. Lay of a complete and thorough post conviction review.</td></tr>
</table>

See Application for Post-Conviction Relief, Case No. PCD-2006-1013. In an unpublished opinion, the OCCA denied all requested relief, including Lay's request for an evidentiary hearing. See Opinion Denying Application for Post-Conviction Relief, entered Sept. 26, 2008, in Case No. PCD-2006-1013.

Lay filed his second application for post-conviction relief on May 4, 2010, after the filing of the instant habeas corpus case. Represented by attorneys Patti Palmer Ghezzi, an attorney with the Federal Public Defender's Office, and Susanna Gattoni, he raised the following propositions of error:

<table>
<tr><td>Proposition I:</td><td>Mr. Lay was deprived of his right to confront a critical witness against him in violation of his Sixth Amendment rights when the medical examiner who performed the autopsy did not testify, even though she was an available witness and her report was admitted as evidence against Mr. Lay.</td></tr>
<tr><td>Proposition II:</td><td>Previous appellate counsel were ineffective and violated Lay's Sixth Amendment rights.</td></tr>
</table>

See Verified Second Application for Post-Conviction Relief, Case No. PCD-2010-407. Lay also sought an evidentiary hearing on his claims. In an unpublished opinion, the OCCA denied the subsequent application for post-conviction relief and the request for an evidentiary hearing. See Opinion Denying Subsequent Post-Conviction Application, entered Oct. 13, 2010, in Case No. PCD-2010-407.

Lay initiated this federal habeas action by filing an application to proceed in forma pauperis (Dkt. # 2), and a request for appointment of counsel (Dkt. # 1). In his petition, Lay identifies the following fourteen (14) claims for relief:

| | |
|---|---|
| Claim No. 1: | Mr. Lay is presently incompetent to proceed through federal habeas corpus proceedings. |
| Claim No. 2: | Mr. Lay was incompetent to stand trial and incompetent to make trial decisions without the assistance of counsel throughout all trial proceedings in violation of his Sixth, Fourteenth, and Eighth Amendment rights. |
| Claim No. 3: | The petitioner was deprived of his Sixth Amendment right to the assistance of counsel and his due process right to a fair trial by the trial judge's acceptance of his invalid and uninformed purported waiver of counsel despite anemic warnings to him about handling his own defense, all in violation of his Eighth Amendment right to a reliable sentencing hearing. |
| Claim No. 4: | The trial court's egregious error in appointing standby counsel for pro-se petitioner in this capital case, but preventing standby counsel from providing the assistance of counsel envisioned by the United States Constitution, resulted in an inadequate waiver of such counsel, in violation of the Sixth Amendment and prevented Mr. Lay from receiving a fair trial under the Fourteenth Amendment, resulting in a death sentence that violates the Eighth Amendment. |
| Claim No. 5: | The trial court unfairly exposed Petitioner to a fundamentally unfair trial by allowing a pro se petitioner to be the ultimate authority on whether his trial would be severed from that of his son's without obtaining a knowing, intelligent, and voluntary waiver of his rights and all in violation of his Sixth, Eighth, and Fourteenth rights under the United States Constitution. |
| Claim No. 6: | Mr. Lay was deprived of his right to confront a critical witness against him in violation of his Sixth Amendment rights when the testifying medical examiner did not do the autopsy and merely parroted the findings, conclusions, and report of the non-testifying expert who could have been called as a witness, but was not. There was no rigorous testing of evidence used against Mr. Lay, and his resulting death sentence was obtained in violation of his Eighth Amendment rights to a fair and reliable sentencing hearing. |
| Claim No. 7: | Internal juror misconduct deprived defendant of his Sixth and Fourteenth Amendment rights and affected defendant's right to a fair trial. |

| Claim No. 8: | Extrinsic evidence introduced through juror misconduct violated Wade Lay's constitutional right to a fair trial. |
|---|---|
| Claim No. 9: | The trial court did not adequately voir dire the jurors so as to allow Wade Lay to exercise his peremptory challenges. |
| Claim No. 10: | Mr. Lay was denied effective assistance of prior counsel in violation of the Sixth and Fourteenth Amendments. |
| Claim No. 11: | The introduction of victim impact testimony violated Mr. Lay's Eighth and Fourteenth Amendment rights to a fair sentencing proceeding. |
| Claim No. 12: | Mr. Lay was deprived of his constitutional rights to a reliable jury verdict as to two aggravating factors. |
| Claim No. 13: | Oklahoma's continuing threat aggravating circumstance is unconstitutionally vague and overbroad and permits jurors to make a factual finding on a probability standard instead of the requisite beyond a reasonable doubt standard. |
| Claim No. 14: | There is no assurance that all factual findings essential to the jury's authority to impose a penalty of death were made beyond a reasonable doubt as is required by the Sixth, Eighth, and Fourteenth Amendments. |

(Dkt. # 18). Respondent filed a response (Dkt. # 39). Petitioner filed a reply (Dkt. # 47).

Throughout the pendency of this case, Lay has submitted numerous pro se letters and documents. On February 28, 2013, Lay's counsel filed a "motion to strike, remove, and delete pro se documents not in compliance with Federal Rules of Civil Procedure and Local Rules and motion for order prohibiting electronic filing of any future pro se documents not signed by counsel of record." (Dkt. ## 126, 127). Lay's attorneys argued that the "[pro se] documents present information which is potentially damaging to [Lay's] own best interests and that of others, and which unwittingly, though not necessarily accurately, describe confidential attorney/client communications." (Dkt. # 126 at 3). Counsel also acknowledged a "duty to protect Mr. Lay from

his own actions." Id. By Order filed March 22, 2013 (Dkt. # 131), the Court agreed with Lay's attorneys and granted the motions.

On September 18, 2015, Lay filed a motion "to reclaim deleted files stricken and removed from the public record and refile all files electronically to be in compliance with Fed. R. Civ. P. 5(d)(4) and remove ruling binding Petitioner to signatory approval of attorneys of record under Fed. R. Civ. P. 11" (Dkt. # 168). The Court's concerns with regard to Lay's pro se filings, as stated in the prior Order (Dkt. # 131), have not changed. Furthermore, the Court finds Fed. R. Civ. P. 11(a) applies to this proceeding and requires that every paper submitted for filing be signed by an attorney of record. For those reasons, Lay's most recent motion shall be denied.

## GENERAL CONSIDERATIONS

### I. Exhaustion

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement). In every habeas case, the Court must first consider exhaustion. Harris, 15 F.3d at 1554. "States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity"). In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal. Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion. Id. at 735 n.1.

Also, the Court may exercise its discretion to deny an unexhausted claim that lacks merit. Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009); 28 U.S.C. § 2254(b)(2).

## II. Procedural Bar

The Supreme Court has considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules. See, e.g., Francis v. Henderson, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground. Coleman, 501 U.S. at 750; Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000). A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998). If the state court finding is "strictly or regularly followed" and applied "evenhandedly to all similar claims," it will be considered "adequate." Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citation omitted).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Sykes, 433 U.S. at 91. The "cause" standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, or interference by state officials. Id. The petitioner must also show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). Alternatively, the "fundamental miscarriage of justice" exception requires a petitioner to demonstrate that he is

"actually innocent" of the crime of which he was convicted. <u>McCleskey v. Zant</u>, 499 U.S. 467, 495 (1991). He must make "a colorable showing of factual innocence" to utilize this exception. <u>Beavers v. Saffle</u>, 216 F.3d 918, 923 (10th Cir. 2000). It is intended for those rare situations "where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake." <u>Klein v. Neal</u>, 45 F.3d 1395, 1400 (10th Cir. 1995).

## III. Standard of Review - AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a habeas court apply a "highly deferential standard" under 28 U.S.C. § 2254, one that "demands that state-court decisions be given the benefit of the doubt." <u>Cullen v. Pinholster</u>, 563 U.S. 170, ---, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted). When a state court has adjudicated a claim on the merits, a federal court cannot grant relief on that claim under § 2254 unless the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The Supreme Court has emphasized that "review under § 2254(d)(1) focuses on what a state court knew and did"; thus, "[s]tate-court decisions are measured against [Supreme Court] precedents as of the time the state court renders its decision." <u>Pinholster</u>, 131 S. Ct. at 1399 (internal quotation marks omitted). "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions . . . ." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). Federal courts may not "extract clearly established law from the general legal principles developed in factually distinct contexts," <u>House v. Hatch</u>, 527 F.3d 1010, 1017 n.5 (10th Cir. 2008),

and Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings," id. at 1015, 1016-17.

A state court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams, 529 U.S. at 405-06. It is not necessary that the state court cite, or even be aware of, applicable Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). A state court decision is an "unreasonable application" of Supreme Court precedent if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08. A court assesses "objective[ ] unreasonable[ness]," id. at 409, in light of the specificity of the rule: "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. When the state court does not explain its decision, the applicant must still show that "there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 562 U.S. 86, 98 (2011); see Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999) ("we owe deference to the state court's result, even if its reasoning is not expressly stated"). Under AEDPA, "a habeas court must determine what arguments or theories supported or . . . could

have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

Review of substantive rulings under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 131 S. Ct. at 1398; see Black v. Workman, 682 F.3d 880, 895 (10th Cir. 2012) (discussing § 2254 review of state-court merits decisions after Pinholster); Fairchild v. Trammell, 784 F.3d 702, 711 (10th Cir. 2015). And a federal court must accept a fact found by the state court unless the defendant rebuts the finding "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has emphasized in the strongest terms the obstacles to relief, observing that § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Richter, 562 U.S. at 102-03 (internal quotation marks omitted). To obtain relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 102. Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Id. at 88.

Although federal court deference to the state court's decision is appropriate only on claims "adjudicated on the merits," 28 U.S.C. § 2254(d), the petitioner has the burden of showing that the claim was not so adjudicated. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter,

562 U.S. at 99; accord Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013). "Where there is no indication suggesting that the state court did not reach the merits of a claim, we have held that a state court reaches a decision on the merits even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion." Dodd v. Trammell, 753 F.3d 971, 983 (10th Cir. 2013) (ellipsis and internal quotation marks omitted). Federal courts do not defer under AEDPA when the state court did not determine the issue on its merits. If the claim is not procedurally barred, this Court then decides the issue in the first instance. See Thacker v. Workman, 678 F.3d 820, 829-30 (10th Cir. 2012).

## CLAIMS FOR RELIEF

### I. Lay's present competence in this federal habeas corpus proceeding

As the first claim of error, counsel for Lay argue that Lay is presently incompetent to proceed through this federal habeas corpus proceeding. See Dkt. # 18 at 40. This claim has been rendered moot by the Supreme Court's decision in Ryan v. Gonzales, 133 S. Ct. 696 (2013) (finding that the incompetence of a state prisoner does not require suspension of the prisoner's federal habeas corpus proceeding). See Dkt. # 136. For that reason, no relief is warranted on claim 1.

### II. Lay's competence at time of trial

As his second claim of error, Lay alleges that he was incompetent to stand trial and incompetent to make trial decisions without the assistance of counsel throughout all trial proceedings in violation of his Sixth, Fourteenth, and Eighth Amendment rights. See Dkt. # 18 at 57. Lay argues that, at the time of his trial, he suffered from a delusional disorder that "prevented him from being competent to stand trial or waive his right to counsel, and undermined his mental capacity to represent himself." Id. at 58. He claims he suffers from "delusions" and that "[t]hese

delusions about the government and American history were so intertwined in Mr. Lay's mind that he truly thought he was meant – in fact 'called upon' by a higher power – to enlighten the public and bring them to the understanding that he had acted out of patriotism." Id. Lay raises both substantive and procedural due process claims. Id. at 59.

In support of this habeas claim, id. at 57-95, Lay cites to the expert opinions of Jeanne Russell, Ed.D., dated May 16, 2008 (id., Ex. 22); Xavier F. Amador, Ph.D., dated September 3, 2009 (Ex. 24); and Michael J. Hanes, Licensed Professional Counselor and Board Certified Art Therapist, dated August 31, 2009 (Ex. 25),[3] along with the original record and the trial record. Lay also cites the Declarations of Rob Nigh, dated May 11, 2009 (Ex. 4), and Kevin Adams, dated May 27, 2009 (Ex. 5), attorneys representing Chris Lay at trial; the Declaration of Diane Miller, Lay's cousin, dated July 24, 2009 (Ex. 6); the Declaration of Rhonda Kemp, Lay's sister, dated August 26, 2009 (Ex. 7); the Declaration of Eleanor Anderson, Lay's mother, dated August 26, 2009 (Ex. 9); the Declaration of Doug Lay, Lay's brother, dated May 19, 2009 (Ex. 11); the Affidavit of Tammy Lay Marano, Lay's ex-wife, dated August 26, 2009 (Ex. 13); the Affidavit of Frank Rhodes, a member of Eastland Baptist Church, dated August 18, 2009 (Ex. 17); the Affidavit of Bill Field, a former member of Eastland Baptist Church, dated August 26, 2009 (Ex. 18); the Affidavit of Kim Lay, Lay's daughter, dated August 26, 2009 (Ex. 19); the Affidavit of Troy Dorrell, the pastor at Eastland Baptist Church, dated August 11, 2009 (Ex. 20); the Affidavit of John Mardirosian, the assistant pastor over operations at Eastland Baptist Church, dated August 26, 2009 (Ex. 21); a second Affidavit of Troy Dorrell, dated August 26, 2009 (Ex. 23); the Affidavit of Bobby Lewis, an OIDS

---

[3]     Of the three (3) expert opinions cited by Lay, only the opinion of Dr. Jeanne Russell (Ex. 22) has been presented to the OCCA.

attorney representing Lay on post-conviction, dated April 29, 2008 (Ex. 27); and the Declaration of Sid Conway, Lay's court-appointed counsel before he decided to represent himself, dated July 24, 2009 (Ex. 35).[4]

In response, Respondent argues that because Lay did not challenge his competency at trial or on direct appeal, the claim raised in claim two is procedurally barred. See Dkt. # 39. Respondent also argues that, to the extent the claim was adjudicated on the merits by the OCCA, Lay is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) based upon review of the record before the OCCA.

In reply, Lay argues that the claim is not procedurally barred because the OCCA "was provided in post-conviction with the most relevant and significant facts to support the salient issue: 'whether the specific symptoms and/or deficits stemming from a mental disease or defect impair the capacities for competency.'" (Dkt. # 47 at 38 (citing Ex. 1, ¶ 19 (Dr. Amador's Declaration, dated 10/22/2010))). Lay acknowledges that many exhibits provided in support of his habeas claims have not been presented to the OCCA, but contends that the observations contained in the exhibits could be discerned from the record before the OCCA.[5] Id. at 40.

---

[4]     Of the affidavits and declarations provided in support of his habeas claim, Lay presented only the Affidavit of Bobby Lewis to the OCCA in support of his first application for post-conviction relief. See Application for Post Conviction Relief, filed May 30, 2008, Case No. PCD-2006-1013, Ex. 6. Lay also presented affidavits of Eleanor Anderson and Rhonda Lay Kemp to the OCCA, see id., Exs. 7 and 8. However the affidavits of Eleanor Anderson and Rhonda Lay Kemp filed as part of this habeas action contain significantly more and different averments than were presented to the OCCA in Case No. PCD-2006-1013.

[5]     The Court disagrees with Lay. Much of the information contained in the exhibits attached to the habeas corpus petition concerns impressions of attorneys and family members regarding Lay's conduct both inside and outside the courtroom and could not be discerned from the record before the OCCA. While the Court recognizes that many of the habeas exhibits may have been compiled to support Lay's claim that he is incompetent to proceed

## A. Procedural Background and the OCCA's Decision

The record reflects that, for more than a year before being allowed to proceed pro se at trial, Lay was represented by the Tulsa County Public Defender's Office. Public Defenders Pete Silva and Sid Conway represented Lay at the preliminary hearing, held August 3, 2004, and continued their representation until excused on July 6, 2005, when Lay was allowed to proceed pro se. During that time, Silva and Conway, both experienced capital defense attorneys, never raised the issue of Lay's competence with the trial judge. On direct appeal, Lay was represented by attorney Stephen Greubel. The issues surrounding Lay's competence at trial were not raised on direct appeal. When asked, during oral argument at the OCCA, if there were any issues concerning Lay's competence, Greubel inexplicably responded that those issues were properly raised in an application for post-conviction relief. Thus, Lay first raised his competence claims in his first application for post-conviction relief.

The OCCA denied relief on Lay's post-conviction challenge to his competence, finding as follows:

> Lay contends in Proposition I that he is entitled to a new trial because he was incompetent and should not have been allowed to represent himself at trial. Lay also asserts that his incompetence was obvious and that the trial court should have *sua sponte* ordered a competency evaluation before allowing him to waive his right to an attorney and proceed *pro se*. Lay further argues that a post-trial/appeal psychological evaluation reveals that he suffers from a delusional disorder that he also likely had at the time of trial. As a result of this disorder, Lay not contends that he failed to present either an effective defense or available mitigation evidence at his trial.

---

with this habeas corpus action (claim 1), the Supreme Court made clear in <u>Pinholster</u> that this Court's review of a claim adjudicated on the merits by the OCCA is limited to the record before the OCCA when it adjudicated the claim. <u>Pinholster</u>, 131 S. Ct. at 1398 (explaining parameters of 28 U.S.C. § 2254(d)).

This issue is waived as it should have been presented on direct appeal. Lay attempts to circumvent this procedural bar by claiming that direct appeal counsel was ineffective for failing to raise it. In support of his claim, he relies on appellate counsel's statement during oral argument that "such facts would be best presented in a post-conviction application." Appellate counsel's belief in this regard is insufficient to overcome this Court's rules and his obligation to present this argument on direct appeal.

Moreover, Lay's application fails to support his contention that he was incompetent to represent himself at trial. In fact, his supplementary evaluation indicates his extremely high I.Q. Lay has failed to present this court with sufficient evidence of his incompetence at trial. As a result, we find both that this claim is procedurally barred and that appellate counsel was not ineffective for failing to raise an unmeritorious issue on direct appeal. Moreover, we find that Lay has failed to present sufficient evidence of his incompetence at trial to justify an evidentiary hearing on this issue. Accordingly, this proposition and Lay's request for an evidentiary hearing are both denied.

(Opinion Denying Application for Post-Conviction Relief, entered Sept. 26, 2008, in Case No. PCD-2006-1013, at 2-3). Thus, although the OCCA found that Lay's challenge to his competence was procedurally barred, the state appellate court also found that, based on the record before it, Lay had failed to present sufficient evidence of his incompetence at trial or of his incompetence to represent himself. In addition, the OCCA found insufficient evidence to justify an evidentiary hearing on the issue. Moreover, in adjudicating Lay's claim that appellate counsel provided ineffective assistance in failing to raise the competency claim on direct appeal, the OCCA denied relief, finding that the competence claim lacked merit and, as a result, appellate counsel was not ineffective for failing to raise an "unmeritorious" claim.

The determination of whether or not the OCCA adjudicated the competence claim on the merits is significant because a federal evidentiary hearing is permissible for a particular claim only if, among other requirements, the claim was not "adjudicated on the merits by a state court." Pinholster, 131 S. Ct. at 1400. If the claim was adjudicated on the merits, a state prisoner is limited

to "the record that was before that state court" in seeking federal habeas relief.  Id.  Furthermore, when a state court's adjudication is ambiguous, i.e., when a claim is rejected without a clear indication of whether the disposition was based on the merits of the claims presented or instead on procedural grounds, a federal habeas court must presume that the decision was on the merits, but the presumption may be overcome under certain circumstances.  Richter, 562 U.S. at 98-100.  Because the OCCA characterized Lay's competence claim as "unmeritorious" and found that, as a result, appellate counsel did not provide ineffective assistance in failing to raise the claim on direct appeal, this Court finds the OCCA adjudicated Lay's competency claim on the merits.  See Hooks v. State, 902 P.2d 1120, 1123 (Okla. Crim. App. 1995) (stating that the OCCA looks to the merits of the omitted issue when it determines appellate counsel effectiveness).  As a result, Lay is limited to "the record that was before the state court" in seeking federal habeas relief.  Pinholster, 131 S. Ct. at 1398.

**B.  Clearly Established Federal Law**

It is well established that a criminal defendant has the constitutional right to be competent to stand trial.  See Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Drope v. Missouri, 420 U.S. 162, 172 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966); Dusky v. United States, 362 U.S. 402 (1960) (per curiam).  In Dusky, the Supreme Court held that the standard to determine competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him."  Dusky, 362 U.S. at 402.  When evidence raises a "bona fide doubt" as to a defendant's competence, the trial judge must hold a hearing on the issue.  Pate, 383 U.S. at 385.  "Competency claims may be based on violations of both procedural and substantive due

process." Allen v. Mullin, 368 F.3d 1220, 1239 (10th Cir. 2004). "A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." Id. (citation omitted).

Lay is not entitled to habeas corpus relief on the claims raised in this ground of error unless he demonstrates that the OCCA's adjudication on the merits was "contrary to, or an unreasonable application of, federal law as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is a "difficult to meet," Pinholster, 131 S. Ct. at 1398 (quoting Richter, 562 U.S. at 102), and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," id. (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted)). The petitioner carries the burden of proof. Id. (citing Visciotti, 537 U.S. at 25). Furthermore, as emphasized throughout this Opinion and Order, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Id.

### C. Procedural Competency

Lay claims that "[t]he trial judge was being unreasonable in allowing Mr. Lay's capital murder trial to go forward when the totality of the circumstances before him should have raised a 'bona fide doubt' regarding the Petitioner's competency to stand trial." (Dkt. # 18 at 60). Lay asserts that his "statements, demeanor, and behavior evidenced mental illness and raised a bona fide doubt concerning his competency." Id. Lay cites numerous instances during both stages of trial when he believes the trial judge should have been concerned about his competence. He urges that

he "was not competent to recognize what was in his best interest." Id. at 75-76. Lay repeats those allegations in his reply (Dkt. # 47 at 42-48). Lay relies on Dr. Amador's report, as well as the declarations of Dr. DiStefano, Rob Nigh, Kevin Adams, and Sid Conway. Significantly, those records have never been presented to the OCCA. However, this Court is limited to considering the record before the state court when the claim was adjudicated on the merits. See Pinholster, 131 S. Ct. at 1398 (stating that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). As a result, this Court may not consider Dr. Amador's report and the declarations of Dr. DiStefano, Rob Nigh, Kevin Adams, and Sid Conway in evaluating Lay's habeas claims. Id.

The procedural due process right to a competency hearing is grounded on the obligation of the state to provide adequate procedures to protect accused individuals from being tried while incompetent. McGregor v. Gibson, 248 F.3d 946, 952 (10th Cir. 2001) (citing Pate, 383 U.S. at 378). In order for a habeas petitioner to prevail on a procedural competency claim, "the petitioner must establish that a reasonable judge should have had a bone fide doubt as to his competence at the time of trial. We view the evidence in the record objectively, from the standpoint of a reasonable judge presiding over petitioner's case at the time of trial." Id. at 954. The petitioner "need not establish facts sufficient to show he was actually incompetent or to show he was incompetent by a preponderance of the evidence." Id.; see also Gilbert v. Mullin, 302 F.3d 1166, 1178 (10th Cir. 2002). The Tenth Circuit has explained that:

> In determining whether there was a "bona fide doubt" as to competence, there are
>
> no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle

> nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

> Drope, 420 U.S. at 180, 95 S. Ct. 896. Tenth Circuit and Supreme Court precedent, however, has established a number of factors that should be considered in making this evaluation-factors that were synthesized in McGregor. Evidence of "irrational behavior," "demeanor at trial," and "any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required." McGregor, 248 F.3d at 954 (quoting Drope, 420 U.S. at 180, 95 S. Ct. 896). Evidence of "mental illness and any representations of defense counsel about the defendant's incompetence" also may be considered. Id. (quoting Walker v. Gibson, 228 F.3d 1217, 1227 (10th Cir. 2000), *cert. denied*, 533 U.S. 933, 121 S. Ct. 2560, 150 L.Ed.2d 725 (2001)). Although "[e]ven one of these factors standing alone may, in some circumstances, be sufficient" to find that a defendant is entitled to a competency hearing, in the end we are required to "examine the totality of the circumstances: all evidence should be considered together, no single factor 'stand[s] alone.'" Id. (quoting Drope, 420 U.S. at 180, 95 S. Ct. 896).

Gilbert, 302 F.3d at1178-79. In Gilbert, the petitioner did not present "the same quantum of evidence that we have found sufficient in other cases to establish that a due-process violation has occurred." Id. at 1180-81 (citing Barnett v. Hargett, 174 F.3d 1128, 1135-36 (10th Cir. 1999) (finding a bona fide doubt where defendant had a history of mental illness, counsel expressed its belief that defendant was presently incompetent, and there were prior findings of defendant's incompetence during the proceedings); United States v. Williams, 113 F.3d 1155, 1157-59 (10th Cir. 1997) (finding a bona fide doubt where there had been outbursts and hysteria by the defendant in court); Williamson v. Ward, 110 F.3d 1508, 1514-17 (10th Cir. 1997) (finding counsel ineffective for not raising a competency claim where defendant had been diagnosed with and treated for mental illness); Sena v. N.M. State Prison, 109 F.3d 652, 653-55 (10th Cir. 1997) (finding grounds for a competency hearing where, even though an expert had determined defendant to be competent, defendant had previously been found incompetent by the trial court)).

Upon review of the record in this case, including the pretrial and trial transcripts and the exhibits presented to the OCCA in support of the first application for post-conviction relief, the Court finds Lay has failed to demonstrate that the OCCA's adjudication was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The record before the OCCA included the report of Jeanne Russell, Ed.D., the Affidavit of Bobby Lewis, and the Affidavits of Eleanor Anderson and Rhonda Kemp. Mr. Lewis, an attorney assigned to Lay's post-conviction appeal states that, after reviewing records concerning Lay's social history, Lay "may have been more mentally unstable than was clear from the trial transcripts." See Application for Post Conviction Relief, filed May 30, 2008, Case No. PCD-2006-1013, Ex. 6 at 1 ¶ 3. In her report, dated May 16, 2008, Dr. Russell states that the purpose of her report was to assist Petitioner's post-conviction counsel "in understanding Mr. Lay's mental health issues and their impact (if any) on his past and current functioning," and to assess Lay's "potential risk for violence while incarcerated." See id., Ex. 3 at 1. Dr. Russell also states that Lay suffers from Delusional Disorder, that his delusional beliefs were present during trial, and that "these beliefs appeared to interfere with his ability to conduct his own defense or work rationally with an attorney." Id. at 15, 16.

However, the trial record reflects that Lay had "sufficient present ability" to consult with his lawyer with a reasonable degree of rational understanding and that he had "a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402. The trial judge conducted two hearings on Plaintiff's motion to proceed pro se. At the first hearing, the trial judge asked Lay about his formal education. (M. Trans. 6/5/05 at 15). Lay told the judge he was a high

school graduate, id. at 15, when in fact he did not complete high school.  Similarly, Lay told the trial judge he had no history of mental health treatment, id. at 16, when in fact he had been treated for depression in 2003 while in custody at the Arapaho County, Colorado, Detention Facility. Significantly, however, during the hearings on Lay's request to proceed pro se, Lay's trial counsel at that time did not make any representation to the trial judge that Lay might be incompetent or that he suffered from any mental infirmity or illness that might interfere with his ability to stand trial or to proceed to trial without the assistance of counsel.  The trial judge asked Mr. Silva directly whether he could "think of anything that I should ask [Wade Lay] or that you want to put on the record in any way."  (M. Trans. 6/5/05 at 18).  Mr. Silva responded, "[t]his is a bad idea.  Sid [Conway] and I are more than prepared and willing to continue to represent Mr. Lay.  He is an intelligent man.  He has put a lot of work into it.  But I would certainly try to dissuade him from this route."  Id. at 19.  Mr. Silva did not inform the judge of any concern for Lay's competence, nor did he correct the record with regard to either Lay's education level or prior treatment for depression. Counsels' failure to raise the issue of competency at trial, while not dispositive, "is evidence that the defendant's competency was not really in doubt and there was no need for a Pate hearing." Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996) (noting that "[b]ecause legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect").

During the second hearing on Lay's request for self-representation, Lay informed the trial judge that he was "very confident in my ability to present a defense and that I will be able to handle myself in the courtroom to a certain degree of professionalism where I won't be a burden."  (M.

Trans. 6/17/05 at 5-6). Lay also emphasized that "this is the most critical moment in my life. It is very – my life is at risk," id. at 7, thereby demonstrating his understanding of the charges against him and the range of punishment he faced. The trial judge also read the charges against Lay and the range of punishment for each charge and Lay told the trial judge that he understood. Id. at 11. After the trial judge apprised him of the dangers of self-representation, id. at 12-14, including that Lay would lose any claim of ineffective assistance of counsel, id. at 14, Lay told the trial judge he wanted to represent himself. Id.

Thereafter, at a discovery hearing held July 6, 2006, the trial judge appointed Mr. Silva as standby counsel and again asked Mr. Silva if he had anything else to tell the judge. (M. Trans. 7/6/05 at 18). Again, Mr. Silva failed to voice any concern regarding Lay's competence and asked only that he be apprised if the Court entertained a motion for continuance of the trial. Id.

After the trial commenced, the record reflects that, although Lay repeatedly attempted to share his extreme political views with the jury and with the trial court and, at times, was given the opportunity to share some of these beliefs, see, e.g., Tr. Trans. Vol. V at 873-876; Tr. Trans. Vol. VI at 998-99, the fact that Lay had these radical ideas alone was not enough for a reasonable trial judge to have a bona fide doubt as to Lay's competence. As pointed out by Lay's expert report submitted in these proceedings, see Dkt. # 18-1 at 111-13, there were also several instances, especially in his second phase closing arguments where Lay boasted of his extraordinary abilities and gifts from God. See Tr. Trans. Vol. VIII at 1348, 1366. Viewed in hindsight by a mental health professional, these may be indicators of Lay's mental illness. However, viewed at the time of trial, a reasonable trial judge would not likely register Lay's remarks as indicative of possible incompetence. The trial transcripts reflect that Lay behaved in an orderly manner in the

proceedings; he was responsive to inquiries from the Court and communicated well, at times very well; he seemed to understand the proceedings and even seemed to understand and follow the procedural rules. There is no evidence on the record of any pretrial medical opinion suggesting Petitioner was not competent to stand trial and there is no evidence that the trial judge was presented with any evidence that Lay was mentally ill at the time of trial.[6]

Considering the totality of the circumstances, the record does not suggest that a reasonable judge would have had a bona fide doubt as to Lay's competency at the time of trial. Therefore, Lay's procedural competency claim lacks merit. Lay has not demonstrated that the OCCA's adjudication of this claim was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented" on direct appeal. 28 U.S.C. § 2254(d). Habeas corpus relief is denied on Lay's procedural competence claim as asserted in claim 2.

### D. Substantive Competency

Lay argues that he was "in fact, tried and convicted while mentally incompetent." (Dkt. # 18 at 82 (quoting Walker v. Gibson, 228 F.3d 1217, 1229 (10th Cir. 2000), abrogated on other grounds, Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001)). This claim of substantive competency

---

[6]     Respondent provides the observations of Michael R. Basso, Ph.D., Associate Professor of Psychology at the University of Tulsa, completed on May 10, 2005, or approximately one month prior to the first hearing on Lay's motion to proceed pro se at trial. (Dkt. # 39-1). Dr. Basso evaluated Lay and administered the M.I.N.I. Plus exam. Id. at 8. At the request of counsel for Respondent, William D. Ruwe, Psy.D., Ph.D., reviewed and summarized Dr. Basso's psychological evaluation of Lay. See Dkt. # 39-2. Dr. Basso's observations, as summarized by Dr. Ruwe, stand in stark contrast to the opinions expressed by Dr. Russell and Dr. Amador. According to Dr. Ruwe, Dr. Basso observed no symptoms of schizophrenia, an absence of paranoid ideation, an absence of delusional thinking, and an absence of symptoms characteristic of a psychotic disorder. Id. at 4-7.

is not subject to procedural bar. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). In support of his claim, Lay cites to "bizarre behaviors behind the scene that cement the fact that Mr. Lay was not competent to stand trial." (Dkt. # 18 at 82). Lay cites letters written to family members. He also claims that symptoms of his disease of "paranoid schizophrenia" were evident as early as 1984 when he was in his late twenties, id. at 85, and that his disease went undiagnosed and untreated for years, id. at 87. Lay also complains that "[i]t was clearly unreasonable for the OCCA . . . to rely on the single fact that Mr. Lay has 'an extremely high I.Q.' to reject the claim." (Dkt. # 47 at 46).

"[A] substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." McGregor, 248 F.3d at 952. However, the Court has determined above that Lay's procedural competency claim is without merit and that finding forecloses his substantive challenge. See United States v. Cornejo-Sandoval, 564 F.3d 1225, 1236 (10th Cir. 2009) (citing United States v. Herrera, 481 F.3d 1266, 1272 n.1 (10th Cir. 2007) ("Since we conclude no bona fide doubt exists that [the defendant] was not incompetent at trial, he likewise fails to make a substantive due process claim.")). "Where a petitioner cannot show a bona fide doubt as to his competency, 'he cannot meet the more stringent substantive due process competency standard.'" Id. (quoting Walker, 228 F.3d at 1230). Therefore, Lay has failed to demonstrate entitlement to habeas corpus relief on his substantive competency claim.

### E. Ineffective assistance of appellate counsel

In its post-conviction analysis, the OCCA stated that Lay's claim that he suffered from delusions and was incompetent at the time of trial was procedurally barred. However, the OCCA also determined that appellate counsel did not provide ineffective assistance in failing to raise the

claim because it was "unmeritorious." As determined above, based on the record before the OCCA at the time of its post-conviction ruling, the underlying claim of incompetence at trial was not supported by the record. Because the omitted claim lacked merit, appellate counsel did not provide ineffective assistance in failing to raise it. See Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (per curiam) (citing Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)). As discussed in more detail in Part X below, the OCCA's adjudication of Lay's ineffective assistance of appellate counsel claim is not contrary to, or an unreasonable application of federal law as determined by the Supreme Court. His request for habeas corpus relief is denied on claim 2.

### III. Validity of waiver of right to counsel

In claim 3, Lay alleges that he was deprived of his Sixth Amendment right to the assistance of counsel and his due process right to a fair trial by the trial judge's acceptance of his invalid and uninformed purported waiver of counsel despite anemic warnings to him about handling his own defense, all in violation of his Eighth Amendment right to a reliable sentencing hearing. (Dkt. # 18 at 96). On direct appeal, Lay claimed that the penalty phase of his trial was rendered unreliable when it was held in the absence of legal counsel. (Principal Brief of Appellant on Direct Appeal at 12). Specifically, he claimed that a defendant in a capital criminal trial has no constitutional right to proceed without counsel during the penalty phase of trial, that he should have been provided qualified second chair/standby counsel to assist him during the penalty phase of trial (raised separately as claim 4 and discussed below), and that the district court's inquiry into his waiver of his Sixth and Fourteenth Amendment right to counsel was inadequate to support the conclusion that he voluntarily and intelligently elected to forego representation by counsel during the penalty phase

of his trial.  Id.  The OCCA rejected the claims raised by Lay, citing <u>Faretta v. California</u>, 422 U.S. 806, 833-34 (1975) (defendant entitled to self-representation at trial and may waive right to counsel).

Lay argues that the OCCA unreasonably applied clearly established federal law in ruling that his waivers of his right to counsel at the guilt and sentencing phases of his capital trial were knowing, voluntary, and intelligent.  (Dkt. # 18 at 106).  In support of this habeas corpus claim, Lay argues that his decision to waive counsel was invalid because he was incompetent and he again relies, in part, on a report prepared by Dr. Xavier P. Amador, Ph.D., dated September 3, 2009.[7]  He also complains that, during the hearings on waiver of counsel, the trial judge gave "anemic, superficial warnings" concerning the pitfalls of self representation and argues that the invalidity of the waiver is supported by the record reflecting his focus on issues at the Tulsa County Jail.  Lay claims that the OCCA erred when it found his waiver of counsel included the second stage, that the OCCA "glossed over" the trial court's lack of a rigorous inquiry, and that the OCCA's adjudication of this claim was an unreasonable application of clearly established federal law because of the failure to use the heightened standard of review required by the Constitution and <u>Faretta</u>.  (Dkt. # 18 at 109-10 (citing <u>Furman v. Georgia</u>, 408 U.S. 238 (1972)).  Counsel for Lay also argues that, because "the trial court did not tailor any of the discussion with Mr. Lay on the dangers and disadvantages of representing himself at the penalty phase of a capital case," the OCCA's decision was "unreasonably based on the facts in the record," and Lay is entitled to habeas relief under 28 U.S.C. § 2254(d)(2).  <u>Id.</u> at 114.

---

[7]     As stated above, Dr. Amador's report has never been presented to the OCCA.  As a result, this Court may not consider it in evaluating Lay's claims under § 2254(d)(1).  <u>See</u> <u>Pinholster</u>, 131 S. Ct. at 1398 (stating that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

In response, Respondent argues that Lay has not demonstrated entitlement to relief under 28 U.S.C. § 2254(d). (Dkt. # 39 at 56). Respondent emphasizes that the right to present a defense is a "personal one," and that the standard of proof for waiver of counsel is found in <u>Faretta</u>: whether the defendant knowingly and intelligently forgoes the benefits associated with the right to counsel. <u>Id.</u> at 50. Respondent claims that the trial court's warnings to Lay "were at least as rigorous" as the warnings approved by the Supreme Court in <u>Faretta</u>. <u>Id.</u> at 51-52. Also, Respondent cites cases for the proposition that <u>Faretta</u> applies to the sentencing phase of a capital trial. <u>Id.</u> at 55-56.

Lay replies that his incompetency claim and the inadequate warning claim are "intertwined" and that Respondent ignores the independent <u>Faretta</u> requirement that "only a competent defendant may knowingly, voluntarily, and intelligently waive his Sixth Amendment right to counsel." (Dkt. # 47 at 49 (citing <u>Faretta</u>, 422 U.S. at 833-34)). Lay claims that his incompetency resulted in an invalid waiver. <u>Id.</u> at 50.

**A. Competence to waive right to counsel**

A criminal defendant has the right to represent himself without counsel, provided that he knowingly and intelligently foregoes the benefits of having counsel assist him. <u>Faretta</u>, 422 U.S. at 835. When a defendant exercises his right to self-representation and waives his right to counsel, the validity of such a waiver contains two distinct inquiries: the court must first ensure that the defendant is competent to waive counsel and it must then determine that the waiver is knowing and voluntary. <u>Maynard v. Boone</u>, 468 F.3d 665, 676 (10th Cir. 2006).

In <u>Indiana v. Edwards</u>, 554 U.S. 164, 174-76 (2008), the Supreme Court found that the standard for competence to stand trial and the standard for competence to represent oneself are different. "In certain instances an individual may well be able to satisfy <u>Dusky's</u> mental competence

standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." Id. at 175-76. However, it did not define what the standard for competence to represent oneself is noting that "[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." Id. at 175. The Court ultimately held that:

> [T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

Id. at 178. In United States v. DeShazer, 554 F.3d 1281 (10th Cir. 2009), the Tenth Circuit applied the Supreme Court's holding in Edwards as follows:

> To the extent that Mr. DeShazer suggests that the district court was duty-bound to deny him the right, we do not read Edwards as announcing such a new rule. By its terms, the Edwards Court held only that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Edwards, 128 S. Ct. at 2388. Thus, while the district court was not compelled to find Mr. DeShazer competent to waive his right to counsel simply because the court had found him competent to stand trial, it does not follow that the district court was absolutely prohibited from doing so. To the contrary, Edwards itself reaffirmed that a court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial. Id. at 2385. We are aware of no case that reads Edwards differently. Accordingly, the district court did not err, let alone plainly err, in finding Mr. DeShazer competent to waive his right to counsel and represent himself at trial. See United States v. Taylor, 514 F.3d 1092, 1100 (10th Cir. 2008) (explaining that error is plain when it is contrary to well-settled law).

United States v. DeShazer, 554 F.3d 1281, 1290 (10th Cir. 2009).

On direct appeal, the OCCA determined that Lay's waiver of counsel "was valid for the entire trial, including the sentencing phase." Lay, 179 P.3d at 620. As discussed above, Lay is not entitled to habeas corpus relief on his claim that he was tried while incompetent. Lay was assisted by counsel at the hearings on his request to waive counsel. Counsel did not raise the question of competency to the trial court, or offer any objection because of Lay's mental state. The record before the OCCA does not reflect that, at the time of trial, Lay suffered "from severe mental illness to the point where [he was] not competent to conduct trial proceedings by [himself]." Edwards, 554 U.S. at 178. Lay has not demonstrated that the OCCA's adjudication of this claim was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented" on direct appeal. 28 U.S.C. § 2254(d). Lay is not entitled to habeas corpus relief on his challenge to his competence to waive counsel.

## B. Adequacy of inquiry into waiver of right to counsel

On direct appeal, Lay challenged the adequacy of the trial judge's inquiry into the waiver of his right to counsel. The OCCA rejected the claim, finding as follows:

> Lay does not challenge the validity of his waiver for the guilt/innocence phase of his trial. In fact, Lay commends the district court for doing an "admirable job" in securing Lay's waiver that stage. "All that is required for an effective election for self-representation is that the defendant have full knowledge or adequate warning concerning this right and a clear intent to exercise it." This is so the record will establish "that 'he knows what he is doing and his choice is made with eyes wide open.'"
>
> Here, Lay's waiver of counsel was valid for the entire trial, including the sentencing phase. He was informed of his right to counsel and the dangers of self-representation. He was also informed that he would not have a second chair or standby counsel in the courtroom. He was strongly discouraged from representing himself. Although Lay was made well aware of the advantages and disadvantages of self-representation, he knowingly and voluntarily chose to represent himself.

<u>Lay</u>, 179 P.3d at 620.

Under the facts of this case, the Court cannot find that Petitioner is entitled to relief under 28 U.S.C. § 2254(d). Whether a waiver was knowing, intelligent, and voluntary "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." <u>Edwards v. Arizona</u>, 451 U.S. 477, 482 (1981) (internal quotations omitted). A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" <u>Faretta</u>, 422 U.S. at 835 (quoting <u>Adams v. United States ex rel. McCann</u>, 317 U.S. 269, 279 (1942)); <u>see also</u> <u>Johnson v. Zerbst</u>, 304 U.S. 458, 468 (1938) (stating that waiver of counsel must be "competently and intelligently" made). The Supreme Court has provided guidelines for courts to consider when accepting a waiver of counsel:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

<u>Von Moltke v. Gillies</u>, 332 U.S. 708, 724 (1948). "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." <u>Carnley v. Cochran</u>, 369 U.S. 506, 516 (1962). Whether the waiver is knowing and voluntary hinges on the defendant's understanding of the significance and consequences of his decision, as well as whether the decision was coerced. <u>Maynard</u>, 468 F.3d at 677. Thus, the Tenth Circuit has said that "[i]t is 'ideal' when the trial judge conducts a 'thorough and comprehensive formal inquiry' including topics such as the nature of the charges, the range of punishment, possible defenses, and a disclosure of risks involved in representing oneself pro se."

34

United States v. Turner, 287 F.3d 980, 983 (10th Cir. 2002) (quoting United States v. Willie, 941 F.2d 1384, 1388 (10th Cir. 1991)). However, "[n]o precise litany is prescribed." United States v. Padilla, 819 F.2d 952, 959 (10th Cir. 1987). Additionally, a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to waive counsel. Faretta, 422 U.S. at 836. Nevertheless, failure to conduct this inquiry does not necessarily indicate a constitutional violation if the surrounding facts and circumstances indicate that the defendant "understood his right to counsel and the difficulties of pro se representation." Willie, 941 F.2d at 1389. Even if a defendant "conduct[s] his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." Faretta, 422 U.S. at 834 (internal quotation omitted).

"In this context, knowing and intelligent means only that he was reasonably informed by the court of the hazards of self-representation and had sufficient understanding of those hazards. The trial court's obligation is to impart enough information to the defendant so that the defendant can make a fully informed choice." Turner, 287 F.3d at 984 (determining that the district court provided defendant enough information for knowing and intelligent waiver where "[t]he court informed Mr. Turner that he had a right to competent counsel to represent him, advised Mr. Turner of the charges against him, and explained to Mr. Turner that he would be required to follow court rules without any assistance from the judge."). In determining whether a defendant knowingly and intelligently waived his right to counsel, "we must consider the total circumstances of the individual case including background, experience and the conduct of the accused person." Padilla, 819 F.2d at 958 (quotation omitted).

After receiving Lay's request to waive his right to counsel, the trial judge conducted two (2) ex parte hearings with Lay and his appointed attorneys, Public Defenders Pete Silva and Sid Conway.[8] At those hearings, the trial judge attempted to "dissuade" Lay from representing himself, M. Trans. 6/2/05 at 2; advised Lay that he would be "bound by the rules," and that he would be hampered in marshaling evidence from jail, id. at 4; asked Lay about his education level and history of treatment for mental illness, id. at 15, 16; advised Lay that his attorneys would be able to undertake the "difficult task" of conducting a capital trial, id. at 21-22; that a "second chair" attorney would not be appointed but that if Lay changed his mind during trial, the Public Defender's Office would be reappointed and brought back to the courtroom to represent Lay, M. Trans. 6/17/05 at 3; advised Lay that he, the trial judge, could not "referee" incidents at the jail, id. at 8; read the charges and the applicable punishments faced by Lay if convicted, id. at 11; advised Lay of the dangers of self-representation, id. at 12, and that by choosing self-representation, Lay would lose any claim of ineffective assistance of counsel, id. at 14. Lay repeatedly told the trial judge that he was "very confident in representing myself," that he "could accomplish the task," comply with the court's rules, and "not be a burden," M. Trans. 6/2/05 at 7, M. Trans. 6/17/05 at 3, 5-6. Lay also told the trial judge that he would be more comfortable if standby counsel were present in the courtroom, M. Trans. 6/2/05 at 17, but that he understood and respected the judge's decision not to appoint a "second chair [attorney]," M. Trans. 6/17/05 at 3; that he understood this to be "the most critical moment in my life . . . my life is at risk," id. at 7; and that he understood the charges and the range

---

[8]     Significantly, and as noted previously, Lay's court-appointed attorneys, who had represented Lay for more than a year, never raised any concern with regard to Lay's competence during the two hearings. When the trial judge asked Mr. Silva if he had anything for the record, Mr. Silva stated only that "[t]his is a bad idea," and assured the judge that he and Ms. Conway "are more than prepared." (M. Trans. 6/2/05 at 19).

of punishment he faced, id. at 11. Lay also stated that he intended to be prepared for trial, but that incidents at the jail, including the disappearance of legal books and papers and lack of telephone access, were making it difficult. M. Trans. 6/2/05 at 12. At the end of the second hearing, Lay told the trial judge that he wanted to represent himself. M. Trans. 6/17/05 at 13-14.

Although Lay now describes the trial judge's warnings concerning the pitfalls of self-representation as "superficial," (Dkt. # 18 at 96), and emphasizes that the trial judge never discussed the importance of mitigation evidence during the second stage of a capital trial, id. at 110-13, the Court nonetheless finds the trial court's inquiry into Lay's decision to waive counsel and proceed pro se was adequate under Faretta. The Court further finds that, although Lay focused on conditions and experiences at the jail during the hearings, his concerns, in large part, related to conditions affecting his ability to prepare for trial. The record reflects that Lay's decisions to waive his right to counsel and exercise his right to self-representation were knowingly, intelligently and voluntarily made. Lay has not demonstrated that the OCCA's adjudication of this claim was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented" on direct appeal. 28 U.S.C. § 2254(d). For that reason, his request for habeas corpus relief is denied.

**C. Right to proceed without counsel during penalty phase of a capital trial**

On direct appeal, the OCCA rejected Lay's claim that a defendant in a capital criminal trial has no constitutional right to proceed without counsel during the penalty phase of trial.

Lay initially claims that he had no right to self-representation in the penalty phase of a capital trial and that it was error for the trial court to allow him to represent himself in the penalty phase. Specifically, he argues that the increased scrutiny demanded by the Eighth Amendment to the U.S. Constitution in a capital

trial overrides a defendant's right to self-representation. Notwithstanding Lay's assertions, the right of self-representation is not limited based upon the type of trial, and the law allows a competent defendant to waive any right to counsel during any phase of a capital trial. We agree with the Seventh Circuit's assessment [in Silagy v. Peters, 905 F.3d 986, 1007 (7th Cir. 1990)]:

> The [United States Supreme] Court in Faretta did not impose any restrictions upon a defendant's right to refuse assistance of counsel except to state that the right must by "knowingly and intelligently" waived. Moreover, we can think of no principled reason to deny a death-eligible defendant his Faretta right to proceed without the assistance of counsel. If an individual in a capital sentencing hearing wishes to proceed *pro se*, Faretta grants him the right to do so.

> Lay does not challenge the constitutionality of *pro se* representation at the guilt/innocence stage of his trial which is as important – if not more so – than the penalty stage. If a defendant is acquitted or convicted of a lesser crime, the death penalty is not longer a sentencing option. Regardless we hold that a criminal defendant may represent himself at all phases of a capital trial: guilt/innocence and sentencing.

Lay, 179 P.3d at 619 (footnotes omitted).

This Court agrees with the OCCA and finds Lay's argument has no basis in law. First, neither Faretta nor any subsequent ruling by the United States Supreme Court limits the Sixth Amendment right to self-representation to non-capital cases. Furthermore, the United States Supreme Court has never held that the right to self-representation does not extend to the penalty phase of a capital trial. As noted by the OCCA, the Seventh Circuit Court of Appeals has held that the right to self-representation applies in capital sentencing proceedings. Silagy v. Peters, 905 F.2d 986, 1007-08 (7th Cir. 1990) (stating that "[i]f an individual in a capital sentencing hearing wishes to proceed pro se, Faretta grants him the right to do so"). And, in another case cited by the OCCA, United States v. Davis, 285 F.3d 378 (5th Cir. 2002), the Fifth Circuit Court of Appeals ruled that the federal district court's decision to appoint independent counsel for a pro se defendant at the penalty phase of a capital murder case for the purpose of presenting mitigating evidence of the kind

that the defendant had specifically declined to present violated the defendant's Sixth Amendment right to self-representation. "Faretta teaches us that the right to self-representation is a personal right. It cannot be impinged upon merely because society, or a judge, may have a difference of opinion with the accused as to what type of evidence, if any, should be presented in a penalty trial." Davis, 285 F.3d at 384. Lay fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). For that reason, his request for habeas corpus relief is denied.

## IV. Trial court erred in preventing standby counsel from providing assistance during trial

In claim 4, Lay alleges that the trial court erred in preventing standby counsel from providing assistance and that the error resulted in an inadequate waiver of counsel, thereby preventing Lay from receiving a fair trial under the Fourteenth Amendment and resulting in a death sentence that violates the Eighth Amendment. (Dkt. # 18 at 115). On direct appeal, Lay argued that the Sixth, Eighth, and Fourteenth Amendments require that a defendant who represents himself in a capital criminal trial be provided with a qualified second chair/standby counsel to assist him with the penalty phase of the trial; alternatively, Lay argued that the district court abused its discretion in failing to afford second chair/standby counsel when Wade Lay requested such assistance during the hearings on his request for self-representation. (Principal Brief of Appellant on Direct Appeal at 13-20). The OCCA denied relief on these claims, finding as follows:

> Lay next argues a defendant who represents himself in the penalty phase of a capital trial must be granted the assistance of qualified standby counsel. Lay again premises his point on the claim that the penalty phase of a capital trial requires additional protection based upon the Eighth Amendment. We have previously urged trial courts to appoint standby counsel to advise the defendant and maintain orderly proceedings when a defendant desires to represent herself/himself. Although trial courts should appoint standby counsel in any case where a defendant desires self-

representation, at the time of Lay's trial it was not required in any case, including the sentencing phase of a capital trial.

Given that appointment of standby counsel was not required at the time of Lay's trial, we find that the district court did not abuse its discretion when it denied his request for a second chair or standby counsel at trial. Additionally, when Lay waived his right to representation, he knew he would not have standby counsel in the courtroom to assist him at the hearings or trial, as the trial court informed Lay that standby counsel would be available if needed but not in the courtroom. The trial court further advised Lay that if he decided not to represent himself, counsel would be appointed for him. Armed with this knowledge, Lay made his choice.

Even though it was not then, and is not now required by either the state or federal Constitution, given the magnitude of a capital trial and its consequences, we are of the opinion that the trial court should have required standby counsel to be present at trial to assist Lay with his self-representation at all phases of the trial. In the future, we require that the trial court appoint standby counsel in all capital cases where an indigent defendant is representing himself/herself. Moreover, such standby counsel shall be present at all court proceedings to assist the defendant in self-representation but allow the defendant to maintain control of the case.

Lay, 179 P.3d at 620 (footnotes omitted).

Without citation to the record, Lay alleges in his habeas petition that, while the trial judge accepted his "waiver" of counsel for the guilt stage, Lay requested the assistance of counsel in the punishment stage, and the trial judge appointed his former counsel as "standby" counsel. (Dkt. # 18 at 115). Lay claims that, even though he told the trial judge that he would be "uncomfortable" with his standby counsel "standing by in another building" (M. Trans. 6/2/05 at 17), the trial judge nonetheless did not allow "standby" counsel to be present in the courtroom and required them to remain on call across the street from the courthouse. (Dkt. # 18 at 115). Lay also alleges that the trial judge erred when he told Lay to ask him or Chris Lay's attorney, Rob Nigh, if he had any questions during trial. Id. at 121, 124. Lay claims that the trial judge "completely missed the boat" by appointing standby counsel and then refusing to allow them to assist Lay, an error of law of "constitutional magnitude." Id. at 122-23. He also claims that no reasonable fact finder could

determine that he "knowingly and voluntarily waived his right to the assistance of counsel in the sentencing phase of his trial . . . ." Id. at 123. For those reasons, Lay asserts that the trial judge's failure to allow "Mr. Lay the benefit of [standby counsel in the courtroom] denies him a fair trial" as guaranteed under the Sixth, Eighth, and Fourteenth Amendments, id. at 116, and that the OCCA's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," id. at 123.

In response, Respondent argues that "[t]here is no clearly established federal law demanding appointment of standby counsel for capital defendants." (Dkt. # 39 at 57). Respondent also maintains that after the trial judge told Lay that standby counsel would not be present in the courtroom, Lay "acquiesced in the decision and nevertheless chose to proceed pro se." Id. at 58. In reply, Lay rebuts Respondent's arguments, claiming that "[t]here are clearly established general principles of Constitutional law that standby counsel is permitted to assist a pro-se defendant in meaningful ways." (Dkt. # 47 at 59-60 (citing McKaskle v. Wiggins, 465 U.S. 168, 170-74 (1984))).

### A.   Failure to appoint qualified standby counsel to assist with trial

Neither Faretta nor McKaskle, 465 U.S. at 184 (recognizing that where standby counsel has been appointed over a defendant's objection, excessive participation by standby counsel or the appearance that the defendant is not representing himself may violate the defendant's Sixth Amendment right to self-representation), required the appointment of standby counsel. See, e.g., Moody v. Thomas, — F. Supp. 3d — , 2015 WL 1004683, *35 (N.D. Ala. 2015). There is no federal constitutional right to appointment of standby counsel where a defendant has knowingly and voluntarily waived his right to counsel and elected to exercise his right to self-representation. Furthermore, in Oklahoma at the time of Lay's trial, the appointment of "standby counsel" was a

"discretionary matter for the trial court to decide." Parker v. State, 556 P.2d 1298, 1302 (Okla. Crim. App. 1976); see also United States v. Gigax, 605 F.2d 507, 517 (10th Cir. 1979), overruled on other grounds by United States v. Lang, 364 F.3d 1210 (10th Cir. 2004). The OCCA has recognized that "there is no constitutional right to hybrid representation partially pro se and partially by counsel." Parker, 556 P.2d at 1302 (citing Stiner v. State, 539 P.2d 750, 759 (Okla. Crim. App. 1975)).

Lay has failed to demonstrate that OCCA's adjudication of his challenge to the trial judge's failure to allow standby counsel to be present in the courtroom was "contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The record reflects that during the first hearing on Plaintiff's motion for self-representation, the trial court told Lay that "it's my belief that stand-by counsel, they're standing by over in another building," and that "it's not as though if you represent yourself, you have a lawyer there to answer every question that you have and to help you through these tough spots because to me there's no distinction between the two of them. So you would be on your own." (M. Trans. 6/2/05 at 4-5). Lay told the trial judge that his "impression of stand-by counsel . . . was that they would be here in the courtroom with me. I thought that's what – the way that process worked, but if that's not state law, then –" Id. at 11. The trial judge interjected:

> [A]t least from my recollection, stand-by counsel, it's not second chair . . . what you're describing to me is what we would call second chair. You would be lead chair and one of these people would be second chair. Well, that's not representing yourself. That's having an attorney, but having them be there to give you legal advice and have you kind of run the show. And at least my impression is is [sic] that that's not what stand-by counsel is.

Id. at 12.

At the second hearing, held more than two (2) weeks later, the trial judge told Lay that, after conducting more research on the issue, "stand-by counsel to me is just that, is that if it becomes necessary . . . to appoint counsel, then I would reappoint the Public Defender's Office and have them back in here, but that your request to represent yourself means that you are representing yourself and that I will not be appointing a second chair for you to give you legal advice as this matter goes along." (M. Trans. 6/17/05 at 3). The trial judge also stated that standby counsel would be available to take the case over if necessary, and that Lay had the right to withdraw his waiver of counsel at any time in the proceedings and to have counsel appointed to represent him. Id. at 13-14. As he had done previously, Lay informed the trial judge that he wanted to represent himself, and he proceeded to trial without the assistance of counsel. Id. at 14.

After Lay was allowed to proceed pro se and prior to commencement of trial, the trial judge repeatedly admonished Lay that he needed to focus on preparing his defense, see M. Trans. 8/1/05 at 9-13, M. Trans. 8/12/05 at 15-21, M. Trans. 8/23/05 at 19, and reminded him that the death penalty was on the table, see M. Trans. 8/12/05 at 22, M. Trans. 8/23/05 at 19. Although the trial judge explained that Lay could withdraw his waiver of counsel "if he change[d his] mind in the course of the trial," see M. Trans. 6/17/05 at 13-14, and advised Lay that, if Lay failed to advance his case through pretrial preparation, he would reappoint the Public Defender's office, see M. Trans. 7/8/05 at 44, the record reflects that Lay never again expressed a need or desire to have standby counsel present in the courtroom or to withdraw his waiver of counsel.

Lay has not established that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

28 U.S.C. § 2254(d)(1). Nor has Lay demonstrated that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). He is not entitled to habeas corpus relief on this claim.

### B. Fourteenth Amendment protection

Lay also claims that the OCCA's refusal to apply to Lay its ruling that, in the future, trial judges must appoint standby counsel to be present in the courtroom for pro se litigants in capital cases, violated his due process rights under the Fourteenth Amendment. (Dkt. # 18 at 124-25). While this claim was not presented to the OCCA as part of Lay's post-conviction proceedings and, as a result, is unexhausted and procedurally barred, the Court nonetheless denies relief under 28 U.S.C. § 2254(b)(2).

In support of this claim, Lay cites <u>Hicks v. Oklahoma</u>, 447 U.S. 343, 346 (1980). In <u>Hicks</u>, the Supreme Court held that Oklahoma violated due process guarantees by depriving the defendant of an undisputed state statutory right to have his punishment determined by a jury. <u>Id.</u> The Court explained that,

> Where . . . a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, <u>cf.</u> <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary derivation by the State.

<u>Id.</u>

The Court finds that Lay reads <u>Hicks</u> too broadly. In Lay's case, the OCCA explicitly recognized and emphasized that appointment of standby counsel in a capital case "was not then, and is not now required by either the state or federal Constitution," and then determined that, although

there had been no abuse of discretion in Lay's case, "given the magnitude of a capital trial and its consequences," the appointment of standby counsel to be present at all court proceedings in capital cases would be required in the future. Lay, 179 P.3d at 620. Thus, the OCCA's ruling was not premised on the trial court's violation of a statutory or constitutional right and its failure to apply its ruling to Lay did not violate Lay's right to due process.[9] Lay is not entitled to habeas corpus relief on this claim.

## V. Trial court error in allowing Lay to decide to be tried jointly with his son

As claim 5, Lay alleges that the trial court erred in allowing him to decide whether his trial would be severed from that of his son. (Dkt. # 18 at 126). Lay raised this claim as Proposition IV on direct appeal. The OCCA denied relief, finding as follows:

> In Proposition IV, Lay submits that his Constitutional right to a fair and individualized sentencing hearing was violated because the trial court failed to order *sua sponte* a sentencing stage severance from his co-defendant, Chris Lay, at trial. Alternatively, Lay claims that the trial court should have instructed the jury *sua sponte* that evidence introduced on behalf of or against Chris Lay could not be considered as evidence regarding him. Both arguments fail.

> The trial court gave Wade Lay several opportunities to have his trial severed from that of his son, Chris. However, both Lays repeatedly stated that they did not want separate trials as they believed that their defense was stronger when united. This was probably true for Chris at sentencing: as Wade's appellate counsel details at length in his brief, part of Chris's second stage argument was that he was the

---

[9] The Court notes that even when the OCCA takes corrective action as a result of trial court error, that action is both authorized under Oklahoma law and constitutional. See Okla. Stat. tit. 22, § 1066; see also Livingston v. State, 795 P.2d 1055, 1058 (Okla. Crim. App. 1990). Because the OCCA has the authority to exercise its discretion to either modify a jury sentence on appeal, or not, as a matter of state law, no due process violation occurs when it exercises that discretion. Powers v. Dinwiddie, 2008 WL 4447059, *8 (W.D. Okla. Sept. 26, 2008) (unpublished opinion cited for its persuasive value) (citing Carbray v. Champion, 905 F.2d 314, 317-318 (Okla. Crim. App. 1990) (citing Clemons v. Mississippi, 494 U.S. 738, 746 (1990))).

victim of his father's beliefs. As positive as the arguments might have been for Chris, they also likely negatively affected Wade at sentencing.

> However, Lay never requested severance and in fact, repeatedly opposed it. The trial court told Lay that the trials would be severed if he changed his mind. The trial court granted Wade Lay's demand for a joint trial and as a result, he cannot now complain of error. This argument is denied.

Lay, 179 P.3d at 622 (footnote omitted).

In his habeas petition, Lay argues that the trial court erred in failing to obtain a knowing, intelligent, and voluntary waiver of the right to have the trial and/or sentencing phase severed. (Dkt. # 18 at 126). The record reflects that, on July 6, 2005, after Lay was allowed to proceed pro se, the prosecution filed a motion requesting that Lay and Chris be tried separately. (O.R. Vol. I at 153-55; M. Trans. 7/6/05 at 19). The State was concerned that statements made by Chris to the police clearly implicated Lay and that the introduction of Chris's statements may violate the holding in Crawford v. Washington, 541 U.S. 36 (2004), and the Confrontation Clause. (O.R. Vol. I at 153). On July 8, 2005, Lay advised the trial judge that he needed to confer with Mr. Nigh before finalizing his response to the motion to sever. (M. Trans. 7/8/05 at 50). On July 18, 2005, Lay opposed the motion to sever, advising the court that,

> [T]here is no conflict with my position on Chris Lay's statements to the Tulsa Police Department. Our defense is in unison together. There's no division there. And I believe that Chris Lay will testify, and furthermore I agree with his statements to the police department and that it's true and accurate, but with further evidence will show that we are not guilty.

(M. Trans. 7/18/05 at 4). On July 22, 2005, the State advised the trial judge that it had no legal basis for a severance. (M. Trans. 7/22/05 at 8). On July 25, 2005, the State filed a "Response to Defendant Wade Lay's Oral Argument," (O.R. Vol. I at 172-73) and stated "[i]f Defendant Wade Lay makes a *knowingly and intelligent* waiver of [his right to a separate trial], the State of Oklahoma

no longer has a significant legal reason for severance." Id. at 173. On July 26, 2005, Lay again insisted that his trial not be severed from that of his son, (M. Trans. 7/26/05 at 9), and the trial judge stated "we're going to keep this joined," id., and advised Lay that he can change his mind on the issue of severance (id. at 10).

At a pretrial hearing held August 11, 2005, Chris addressed the court and advised that he disagreed with his attorney's plan to file a motion for severance. (M. Trans. 8/11/05 at 19). Chris stated, "I'm not a child. And this is a decision that should be made purely of my own volition." Id. Lay again stressed that he and Chris "would like to have our defense in unison." Id. at 21. He also stated that "we believe it strengthens our defense to be tried together." Id. at 22. Thereafter, on September 6, 2005, Chris's attorney, Rob Nigh, filed a motion for severance. (O.R. Vol. II at 256-66). On September 9, 2005, the trial judge held a hearing on the motion for severance. Mr. Nigh explained why it was critical for the trial to be severed. (M. Trans. 9/9/05 at 5-7). Chris Lay vehemently objected, arguing that his and Lay's defense is "strongest if it is in unison." Id. at 4. The State also objected, noting that no authority justified severance. Id. at 7. The trial judge concluded that was "no legal cause for severance," id. at 9, but agreed to revisit the issue if confrontation rights became an issue, id. at 10. Ultimately, Lay and Chris were tried jointly.

According to counsel for Lay, the problems resulting from the joinder were apparent during jury selection when counsel for Chris sought jurors who were sympathetic to the possibility of a son being improperly influenced by his father and were especially apparent during sentencing phase, when mitigating evidence for Chris became aggravating evidence for Lay. In his habeas petition, Lay claims that, as a result of the joint sentencing phase, "Chris Lay's life was spared, most likely, at the expense of his father." (Dkt. # 18 at 138).

Respondent argues that Lay has not shown that the OCCA's adjudication of this claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, or that was contrary to, or an unreasonable application of, clearly established Supreme Court authority. (Dkt. # 39 at 63). Respondent further alleges that, because Lay relies on evidence that has never been presented to the OCCA, including Exhibits 3, 4, 5, 24, and 35 to the petition, this claim for relief is a mixture of exhausted and unexhausted claims. Id. at 65. According to Respondent, any unexhausted claim is procedurally barred. Id. Respondent also states that no Supreme Court decision requires severance during the penalty phase of capital jury trials. Id. Respondent emphasizes that both defendants insisted that they be tried jointly and that Chris Lay "vehemently objected" when his own attorney filed a motion to sever. Id. at 67 (citing M. Trans. 7/18/05 at 4, 8/11/05 at 21, 9/9/05 at 4). In addition, Respondent cites to the trial court's advice to Lay that if he wanted a severance, all he had to do was ask and that even if he insisted on waiving his right to a severed trial, he could revoke his waiver later. Id. (citing M. Trans. 7/18/05 at 4, 7/22/05 at 8, 7/26/05 at 9-10). Further, Respondent cites to the jury instructions requiring the jury "to give individualized consideration to Lay's degree of participation and focus on Lay's individual culpability in the killing," and to give separate consideration as to each defendant with regard to the aggravating and mitigating circumstances. Id. at 68 (citing O.R. Vol. III at 408, 409-14, 416-17, 419-20).

In reply, Lay claims that his "case is unique" and that "[t]he circumstances surrounding the determination to proceed with a joint trial is [sic] unusually convoluted." (Dkt. # 47 at 63-64). Lay emphasizes that "all the players knew ahead of time and the state court acknowledged on appeal that Chris Lay's defense at the sentencing stage of trial was antagonistic to Mr. Lay." Id. at 65. Lay also

argues that "[b]y failing to require an instruction that would have advised the jury that the mitigating evidence presented on behalf of Mr. Christopher Lay was not to be used against Wade Lay, the court's decision was objectively unreasonable and denied Mr. Lay the reliable sentencing to which he is entitled under the Constitution." Id. at 68 (citing Enmund v. Florida, 458 U.S. 782, 798 (1982); Lockett v. Ohio, 438 U.S. 586 (1978); Woodson v. North Carolina, 428 U.S. 280 (1976)).

Generally, severance is a question of state law not cognizable in federal habeas proceedings. Fox v. Ward, 200 F.3d 1286, 1292 (10th Cir. 2000) (citing Cummings v. Evans, 161 F.3d 610, 619 (10th Cir.1998)). There is no constitutional right to severance without a strong showing of prejudice caused by the joint trial. See id. Severance is not constitutionally required merely because defense theories conflict or because one defendant is attempting to cast blame on another. Rather, a petitioner must show "real prejudice." Id. at 1293. "Such actual prejudice is shown if the defenses are truly mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." Id. (quotation omitted). "'Mutually antagonistic defenses are not prejudicial per se.'" Id. (quoting Zafiro v. United States, 506 U.S. 534, 538 (1993)).

After careful review of the record in this case, the Court finds that Lay has failed to demonstrate that, as to the guilt-innocence stage of trial, he suffered prejudice as a result of being tried jointly with his co-defendant, his son Chris. Although Rob Nigh, Chris's attorney filed a motion to sever, Chris vehemently objected to the motion. Both Lay and Chris demanded a joint trial. Both Lay and Chris testified in his own behalf and asserted their defense of necessity. Their testimony was consistent. Neither Lay nor Chris made a statement exculpating himself while inculpating the other. Cf. Bruton v. United States, 391 U.S. 123, 131 (1968) (holding that the admission in evidence of a co-defendant's confession inculpating the defendant at a joint trial at

which the co-defendant does not testify violates the defendant's Sixth Amendment right to confront witnesses against him). While Chris' attorney sought to establish that the evidence against Lay was stronger and more substantial than the evidence against Chris, the "defenses" of Lay and Chris were not mutually antagonistic.

Lay argues that the prejudice he suffered from being tried jointly with Chris was especially acute in the penalty phase of his trial where mitigation witnesses for Chris testified that Chris was controlled by his father and influenced by his father's teachings. See, e.g., Tr. Trans. Vol. VII at 1123, 1143, 1157, 1216, 1219, 1251. As acknowledged by the OCCA in resolving this claim on direct appeal, the second stage arguments may have been positive for Chris, but were likely negative factors for Lay. Lay, 179 P.3d at 622. The Court agrees with the OCCA that the mitigation evidence presented by Chris Lay, that he attempted to rob the bank at the urging of his father and because of the ideals and values his father instilled in him, likely became aggravating evidence against Lay in the eyes of the jury and may have suggested that Lay was a bad father to Chris. However, Lay accepted the blame for his son's actions and stated several times at trial that he would gladly die to spare his son. Thus, Lay's decision to be tried jointly with Chris was logical when viewed as coming from a father who cared greatly for his son and desired to see his son as much as possible. Furthermore, as mitigation evidence, Lay presented testimony from his daughters, April and Kim. Both daughters testified that they had a good relationship with Lay. See Tr. Trans. Vol. VII at 1262, 1265, 1268. April testified that Lay had been a loving father. See id. at 1262. Moreover, Lay's jury received the individualized sentencing instruction, see O.R. Vol. III at 408 (Supplemental Instruction No. 8), and Lay does not point to anything in the record tending to show that the jury failed to follow this instruction. In addition, the jury received a set of instructions for

aggravating circumstances as alleged against Lay, see id. at 409, 411, 413, 416 (Supplemental Instruction Nos. 9, 11, 12, 14), and a separate set of instructions for aggravating circumstances as alleged against Chris, see id. at 410, 412, 414, 417 (Supplemental Instruction Nos. 10, 11(a), 12(a), 15). The jury also received an instruction summarizing Lay's evidence of mitigating circumstances, see id. at 420 (Supplemental Instruction No. 18), and a separate instruction summarizing Chris' evidence of mitigating circumstances, see id. at 419 (Supplemental Instruction No. 17).

As emphasized above, Lay and Chris requested that they be tried together, and, in fact, refused several offers made by the trial judge to sever. In light of the evidence and instructions discussed above, and despite Lay's arguments to the contrary, the trial court's decision to allow Lay the authority to be tried jointly with his son did not result in a fundamentally unfair trial. The Court finds that the OCCA's decision is not contrary to, or an unreasonable application of federal law as determined by the Supreme Court, nor is it an unreasonable determination of the facts in light of the evidence presented to the OCCA. 28 U.S.C. § 2254(d). Therefore, Lay is not entitled to habeas relief on this claim of error.

## VI. Violation of Sixth Amendment right of confrontation

As his sixth proposition of error, Lay argues that his rights under the Confrontation Clause were violated when the testifying medical examiner, Ronald Distefano, D.O., did not perform the autopsy and merely parroted the findings, conclusion, and report of the non-testifying expert, Vania O. Revell, D.O., who could have been called as a witness, but was not. (Dkt. # 18 at 155). Lay complains that, not only was Dr. DiStefano allowed to read Dr. Revell's "testimony" into the record when Dr. Revell was not an unavailable witness, but also that Lay failed to cross-examine because he was upset and distracted by other events affecting his son. Id. at 156-57. As a result, "extremely

prejudicial" testimony that served to tell only part of the story was admitted with being subjected to cross-examination in violation of Lay's Sixth Amendment right of confrontation.  Id. Specifically, Lay alleges that the conclusion contained in Dr. Revell's report, that the cause of death was "gunshot wound of head and shotgun wound of the trunk meaning the torso of the body," left the jury with the "erroneous impression that the gunshot wound caused by the shot fired by Wade Lay was a fatal wound when it was not." Id. at 158. Lay also claims that he was deprived of a fair and reliable sentencing proceeding in violation of the Eighth Amendment.  Id. at 162-63.

Lay first raised these claims to the OCCA in his second application for post-conviction relief. The OCCA summarized the procedural rules applicable to claims raised in a subsequent application for post-conviction relief, as follows:

> We cannot consider the merits of a subsequent application for post-conviction relief "unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in a timely original application or in a previously considered application filed under this section, because the factual or legal basis for the claim was unavailable."  A legal basis is unavailable if it (a) either was not previously recognized or could not have been reasonably formulated from a decision of an appellate court, or (b) is a new rule of constitutional law given retroactive effect by an appellate court.  A factual basis is unavailable if it could not be previously ascertained through the exercise of reasonable diligence.
>
> Other procedural bars exist.  We will not consider a subsequent application for post-conviction relief "unless it its filed within sixty (60) days from the date the previously unavailable legal or factual basis serving as the basis for a new issue is announced or discovered."  Finally, in considering a subsequent application, we cannot grant relief unless the underlying facts, if proven and weighed in light of the evidence as a whole, would establish by clear and convincing evidence that, but for the alleged error, no reasonable finder of fact would have convicted the petitioner or imposed a death sentence.

(Order Denying Subsequent Post-Conviction Application, No. PCD-2010-407, Oct. 13, 2010, at 2-3 (footnotes omitted)).  The OCCA went on to find that the factual basis for the Confrontation Clause

claim "ha[d] been available since the medical examiner testified at Lay's trial," id. at 4, and that the dates of recent Supreme Court decisions forming the basis of Lay's claims, including Crawford v. Washington, 541 U.S. 36 (2004); Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009); and Briscoe v. Virginia, 130 S. Ct. 1316 (2010), all fell outside the statutory 60-day limit, id. at 3-4. For those reasons, the OCCA imposed a procedural bar, declining to consider the claim on the merits. Id. at 4.

In response, Respondent asserts that Lay did not raise this claim on direct appeal or in his application for post-conviction relief and that the claim is unexhausted. (Dkt. # 39 at 70). As a result, Respondent urges the Court to either deem the claim procedurally barred, id. at 71, or deny relief on the merits since Lay waived any confrontation error and has not shown prejudice flowing from the alleged error, id. at 78.

In reply, Lay states that he exhausted this claim by raising it in his second application for post-conviction relief. (Dkt. # 47 at 68). Although the OCCA imposed a procedural bar on the claim, Lay argues that "[t]he Oklahoma procedural default rule being applied here is not being applied even handedly or independently of federal law." Id. at 69. As to the merits of the claim, Lay argues that "the denial of his right to confront witness Vania O. Revell, who wrote the autopsy admitted into evidence, resulted in both the conviction and the death sentence being unreliable and in violation of Mr. Lay's confrontation rights . . . ." Id. at 72.

The Court finds that, because Lay raised this claim in his second post-conviction proceedings, the claim is exhausted. However, the OCCA found that the factual basis for this claim had been available since the medical examiner testified at Lay's trial, and thus, was "time-barred" and procedurally barred and would not be considered on the merits. (Opinion Denying Subsequent

Post-Conviction Application, entered Oct. 13, 2010, in Case No. PCD-2010-407, at 4). The state appellate court also rejected Lay's argument that, under Valdez v. State, 46 P.3d 703, 710 (Okla. Crim. App. 2002) (finding that suspension of statutory and procedural bars "is reserved for issues which may gravely offend a defendant's constitutional rights and constitute a miscarriage of justice"), his confrontation clause claim warrants consideration on the merits. The OCCA concluded that "[n]o such issue [as contemplated in Valdez] is presented here." (Opinion Denying Subsequent Post-Conviction Application, entered Oct. 13, 2010, in Case No. PCD-2010-407, at 5).

In his reply to Respondent's response, Lay, relying upon Valdez, 46 P.3d at 704-05, 710-11, and several other OCCA cases, claims that Oklahoma's procedural bar is inadequate to preclude federal habeas review because the OCCA has, on occasion, chosen to review the merits of a defaulted claim to prevent a miscarriage of justice. (Dkt. # 47 at 69-70). The Tenth Circuit rejected a similar claim in Spears v. Mullin, 343 F.3d 1215 (10th Cir. 2003), and found that Oklahoma's procedural bar is applied regularly and consistently in the "vast majority of cases." Id. at 1254-55 (quoting Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995)). Moreover, the Supreme Court recently recognized that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." See Walker v. Martin, 562 U.S. 307, 316 (2011) (citing Beard v. Kindler, 558 U.S. 53, 60-61 (2009)). This Court finds that Oklahoma's procedural bar is adequate to preclude federal habeas review.

Lay also relies upon Valdez to argue that this particular procedural default rule is not independent of federal law. (Dkt. # 47 at 71). He claims that, because Valdez potentially permits review of otherwise procedurally barred claims that impact important rights, the OCCA is required

to consider the constitutional underpinnings of a claim before it can apply a procedural bar. (Dkt. # 18 at 230 n.69). Thus, Lay concludes that the OCCA's decision was not independent of federal law.

First, as discussed above, in its post-conviction decision on this issue, the OCCA found Lay's claim to be procedurally barred and did not rule on the merits of the claim. In response to Lay's assertion that his claims should be reviewed pursuant to the "miscarriage of justice" exception in Valdez, the OCCA simply assumed without deciding that Lay's defaulted claims were meritorious and found that "failure to consider them on the merits does not result in a miscarriage of justice." (Opinion Denying Subsequent Post-Conviction Application, entered Oct. 13, 2010, in Case No. PCD-2010-407, at 5). This statement does not reflect any due consideration of the issue. Second, the OCCA's decision, as a whole, does not reflect any holding that is not based on state law. The OCCA referenced Lay's litigation history, cited its procedural rules, and then applied them to Lay's claims. The OCCA found that its procedural rules prevented it from reaching the merits of Lay's claims, all of which could have been presented in his direct appeal and original post-conviction application. Id. at 1-6.

Even if the OCCA's above-quoted language is viewed as an application of its miscarriage of justice exception, it does not show that federal law was involved in its determination. The Tenth Circuit's decision in Gardner v. Galetka, 568 F.3d 862 (10th Cir. 2009), cert. denied, 559 U.S. 993 (2010), is instructive. While ultimately resolving the petitioner's issue on the merits, the Court noted that a state court's consideration of exceptions to its procedural bar would not automatically result in a finding of lack of independence. In particular, the Court stated:

> We do not think that a state's decision to allow exceptions to its procedural bar in the interest of preventing "fundamental unfairness," which requires an examination of

> the merits, makes the underlying bar any less procedural. If this were so, any procedural bar with an exception based on avoiding a fundamental miscarriage of justice would lose its character as an independent procedural ground under Michigan v. Long, 463 U.S. 1032, 103 S. Ct. 3469, 77 L.Ed.2d 1201 (1983).

Gardner, 568 F.3d at 884. Consistent with Gardner, the Court finds that the OCCA's consideration of whether Lay's defaulted claims would be considered "in the interests of justice" did not result in a ruling dependant on federal law.

Based on the foregoing, the Court finds that the OCCA's application of a procedural bar to the issues presented in claim 6 is both adequate and independent. Accordingly, Lay's claim 6 is procedurally barred and federal habeas review is precluded unless Lay can establish cause and prejudice or a fundamental miscarriage of justice. Due to Lay's focus on the issues of adequacy and independence, Lay has devoted little argument to satisfying these exceptions.

To establish cause for the default, Lay claims that his appellate counsel was ineffective. Lay presented this claim of ineffective assistance of appellate counsel as a separate claim in his second application for post-conviction relief. However, as discussed in more detail in Part X below, this claim of ineffective assistance of appellate counsel is itself procedurally barred. For that reason, it cannot serve as "cause" to overcome the procedural bar unless Lay can also establish cause excusing his default of the ineffective-appellate-counsel claim. Spears, 343 F.3d at 1256 (citing Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000)). Because Lay fails to demonstrate cause, the Court need not address the issue of prejudice as both are required to satisfy the first exception. Coleman, 501 U.S. at 750 (meeting the first exception requires a showing of both cause and prejudice). Lay also fails to satisfy the fundamental miscarriage of justice exception. Lay makes no attempt to

demonstrate his actual innocence.[10]  Therefore, Lay's claim 6 allegations of error are procedurally

barred and habeas corpus relief is denied on that basis.

## VII.  Internal juror misconduct

In claim 7, Lay alleges that "internal" juror misconduct deprived him of his Sixth and

Fourteenth Amendment rights to a fair trial.  See Dkt. # 18 at 164.  The record reflects that one of

the jurors, John Charles McDonald (McDonald), knew Lay's ex-wife, Tammy Lay (Tammy),[11] prior

to trial.  Lay filed a motion for new trial based on this claim.  At the conclusion of an evidentiary

hearing on the motion for new trial, the trial judge denied the motion, finding that there was no juror

misconduct or evidence "that would have made any difference in the outcome of the trial."  (M.

Trans. 12/15/05 at 65, 68).  Lay then raised the claim on direct appeal.  The OCCA reviewed the

claim on the merits, "giving substantial deference to the trial court's findings."  Lay, 179 P.3d at

621.  The OCCA summarized the facts underlying this claim, as follows:

> According to Tammy Lay's testimony at the hearing on the motion for a new trial,
> this particular juror was a customer of the Westside Gentlemen's Club where Tammy
> worked as a waitress and manager. Tammy testified that the juror had sexually
> propositioned her a few times and had offered to help her get a car despite credit
> problems. The juror testified at the evidentiary hearing that he recognized Tammy
> at trial but assumed it was from his occupation as a car salesman, although conceding
> that it could have been from her employment as a waitress. The juror denied ever
> propositioning Tammy or that their prior contact had any affect [sic] on his
> impartiality as a juror.

---

[10]     In its Opinion denying Lay's second request for post-conviction relief, the OCCA noted that
"Lay . . . never denied participating in the robbery or shooting and claimed that he instigated
the crimes."  (Opinion Denying Subsequent Post-Conviction Application, entered Oct. 13,
2010, in Case No.  PCD-2010-407, at 5).

[11]     During the sentencing phase of trial, Tammy presented mitigating evidence on behalf of her
son, Chris Lay.

Id. The OCCA found that the trial court's denial of the motion for new trial was supported by the record and that "there was no evidence that the juror was anything other than fair and impartial," id., and denied relief on the claim, concluding that Lay "failed to establish prejudice or harm by this juror's service." Id. (footnote omitted).

Lay claims that evidence presented at the hearing on the motion for new trial demonstrated that McDonald intentionally failed to disclose that he knew Tammy Lay and then gave evasive and untruthful answers when questioned about his relationship with her. (Dkt. # 18 at 164-67). Lay contends that McDonald's lack of truthfulness demonstrates actual, or at least implied, bias against Lay thereby violating Lay's Sixth Amendment right to a fair trial. Id. at 167-68, 171.

In response, Respondent argues that Lay has failed to demonstrate, or even allege, that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 39 at 80). In reply, Lay contends that Respondent's argument "overlooks applicable law and relies on the state court's erroneous, and objectively unreasonable legal conclusion, which was based on salient facts that were ignored." (Dkt. # 47 at 76).

Under the Sixth Amendment to the United States Constitution, a defendant has a right to trial by an impartial jury. "One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'" McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). Jurors are presumed to follow the instructions. Zafiro, 506 U.S. at 540-41; Richardson v. Marsh, 481 U.S. 200, 211 (1987); see also United States v. McKissick, 204 F.3d 1282, 1299 (10th Cir. 2000) (denial of motion for mistrial in absence of evidence in the record that jury was affected). Jurors are

presumed to be free of bias. United States v. Campbell, 300 F.3d 202, 214 (2d Cir. 2002); Wells v. Murray, 831 F.2d 468, 472 (4th Cir. 1978) (jurors are presumed to be impartial in the absence of evidence to the contrary). The Constitution guarantees a fair trial, not a perfect one. Delaware v. Van Arsdall, 475 U.S. 673 (1986). A jury's verdict "must be based upon the evidence developed at trial," Irvin v. Dowd, 366 U.S. 717, 722 (1961), not on extraneous information presented outside "a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." Turner v. Louisiana, 379 U.S. 466, 473 (1965); see also Vigil v. Zavaras, 298 F.3d 935, 940 (10th Cir. 2002).

Furthermore, there is no rule that a juror cannot be acquainted in any way with any attorney or witness in a case in order to have a fair trial. See, e.g., United States v. Frank, 901 F.2d 846 (10th Cir. 1990) (affirming a trial court's denial of a challenge for cause to remove a juror when that juror acknowledged being acquainted with the prosecuting attorney and a founding member of MADD); United States v. Rucker, 2007 WL 2990545, *4-5 (D. Kan. Oct. 11, 2007) (unpublished).[12] Instead, "[a]n important part of the district judge's broad discretion centers on his response to allegations of juror bias or misconduct. For example, it is within the trial court's discretion to determine whether and when to hold an evidentiary hearing on such allegations." United States. v. Bradshaw, 787 F.2d 1385 (10th Cir. 1986) (declining to presume bias where a juror was acquainted with a Government witness); see also United States v. Gallegos, 975 F.2d 710, 712 (10th Cir. 1992) ("Keeping in mind the juror's responses to the judge's questions and the juror's mere acquaintance with a defense

---

[12]     This unpublished opinion is not precedential but is cited for its persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

witness, we are hard pressed to see how the district court's conduct constituted error, let alone plain error.").

"[U]nder § 2254(e)(1), a state-court fact finding is binding on the federal courts unless rebutted by clear and convincing evidence." Richie v. Workman, 599 F.3d 1131, 1135 (10th Cir. 2010). The Court notes that at the evidentiary hearing on Lay's motion for new trial, the trial court found McDonald credible. (M. Trans. 12/15/05 at 65). A trial judge's determination of a potential juror's bias is a factual finding entitled to the presumption of correctness under the AEDPA. Castro v. Ward, 138 F.3d 810, 824 (10th Cir. 1998). The Tenth Circuit has specifically held that federal courts may only reverse state court determinations of juror impartiality upon a showing of "manifest error." Brecheen v. Reynolds, 41 F.3d 1343, 1350 (10th Cir. 1994); see also Cannon v. Gibson, 259 F.3d 1253, 1280 (10th Cir. 2001) (deferring to a trial judge's finding as to whether a potential juror is biased unless the finding is rebutted by clear and convincing evidence); accord Sallahdin v. Gibson, 275 F.3d 1211, 1224 (10th Cir. 2002). This limited review is justified by a trial judge's unique advantage in observing and evaluating the demeanor of jurors. Brecheen, 41 F.3d at 1350 (citing Church v. Sullivan, 942 F.2d 1501, 1519 (10th Cir. 1991)). Lay fails to present clear and convincing evidence that rebuts the state court's factual findings. See 28 U.S.C. § 2254(e)(1).

Lay also argues that juror bias should be presumed because McDonald was allegedly dishonest. Even if the Court were to assume that McDonald was dishonest, Lay cites no applicable Supreme Court precedent establishing that it is appropriate to assume bias in that situation. In a civil case, the Supreme Court has found that, in order to obtain a new trial in situations involving juror dishonesty, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a

60

challenge for cause." <u>McDonough Power Equip., Inc.</u>, 464 U.S. at 556. Lay has not established nor even alleged that McDonald dishonestly answered any material question during voir dire.

Lay also argues that juror bias should be presumed because if Ms. Lay is to be believed, McDonald had a very personal connection with her. In support of this claim, Lay relies on <u>United States v. Brooks</u>, 569 F.3d 1284, 1288-89 (10th Cir. 2009). In <u>Brooks</u>, the Tenth Circuit found that a defendant would be entitled to a new trial if he could establish facts allowing an implication that a juror was biased, such as a "personal connection to the parties or circumstances of the trial." <u>Id.</u> at 1289. A "personal connection" can be shown, for example, by "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." <u>Id.</u> at n.3 (citation omitted). Lay has not established a "personal connection" between McDonald and Ms. Lay sufficient to allow an implication of bias. Even if Ms. Lay were to be believed that McDonald had a sexual interest in her, Ms. Lay did not testify that they had a close relationship, much less one equivalent to the relationship between close relatives. Moreover, McDonald did not witness or was not otherwise involved in the criminal acts giving rise to Lay's convictions.

Lay has failed to establish that the OCCA's determination that there was no "internal juror misconduct" was "based on an unreasonable determination of the facts in light of the evidence presented" on direct appeal, nor has he demonstrated that the OCCA's adjudication of this claim was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). Habeas corpus relief on Lay's claim 7 is denied.

**VIII. Introduction of Extrinsic Evidence Through Juror Misconduct**

In claim 8, Lay alleges that McDonald read a newspaper article about the crime and disclosed facts from the article to another juror. (Dkt. # 18 at 174). Lay raised this claim on direct appeal to the OCCA. The OCCA stated that Lay had raised this claim in his motion for a new trial and that evidence presented at the hearing on that motion demonstrated that the only information McDonald learned from the article was that the case involved a father and son who had robbed a bank. Citing Tomlinson v. State, 554 P.2d 798, 804 (Okla. Crim. App. 1976), the OCCA found that Lay had failed to demonstrate that "the media reports were prejudicial to the judgment." Lay, 179 P.3d at 621.

Lay claims that when McDonald read a newspaper article about the case prior to trial and told at least one other juror about it, McDonald became an unsworn witness with the meaning of the Confrontation Clause. (Dkt. # 18 at 175). Furthermore, although McDonald "would not admit his wrongful conduct [at the hearing on the motion for new trial], it is impossible for Wade Lay to ascertain what newspaper account of the trial Juror McDonald read and shared with a fellow juror" and, because the Eighth and Fourteenth Amendments require a heightened degree of certainty when reviewing issues in a death penalty case, Lay requests that prejudice be presumed. Id. at 174-75. In addition, Lay seeks discovery of the juror questionnaires, kept "sealed" with the trial court, to support his claim that McDonald was untruthful during voir dire. Id. at 177.

In response, Respondent argues that Lay is not entitled to habeas corpus relief on this claim because he cannot demonstrate prejudice. (Dkt. # 39 at 87). In reply, Lay states that, because he cannot ascertain the exact newspaper account read by McDonald, "it is impossible for [him] to be able to ascertain the total harm suffered by him." (Dkt. # 47 at 80). Lay again asserts that

"prejudice should be presumed as the Eighth and Fourteenth Amendments require this Court to exercise a heightened degree of certainty when reviewing issues in a death penalty case." Id. (citing Mills v. Maryland, 486 U.S. 367, 376-77 (1988)).

The constitutional standard of fairness requires that a defendant have "a panel of impartial, 'indifferent' jurors" who are free from undue influence from the media. Sheppard v. Maxwell, 384 U.S. 333, 350-51 (1966); Irvin, 366 U.S. at 722. "Qualified jurors need not, however, be totally ignorant of the facts and issues involved." Murphy v. Florida, 421 U.S. 794, 799-800 (1975). The law will not presume that jurors were exposed to publicity or were prejudiced thereby. Welch v. United States, 371 F.2d 287, 291-92 (10th Cir. 1966). Further,

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Irvin, 366 U.S. at 723 (citation omitted).

The basis of Lay's claim of "external juror misconduct" is that McDonald had allegedly read a newspaper account of Lay's case prior to trial and had told at least one other juror about it. The evidence developed at the hearing on Lay's motion for new trial demonstrated that one juror, Timothy Brown, remembered McDonald mentioning having seen a newspaper article about Lay's case, i.e., that it was a bank robbery involving a father and son. (M. Trans. 12/1 & 15/05 at 25). Brown recalled that the comment had come before either McDonald or Brown had been called to the jury box. Id. at 25-26. McDonald denied reading any newspaper articles about the crime and consequently denied making any comments to any other jurors from the newspaper. Id. at 47. Apart

from Brown, no other juror testified that McDonald had indicated he had any information about the case other than what was presented in court.  Id. at 6-7, 9, 11, 14, 16-17, 18, 20, 23, 55, 57.

Nothing in the record demonstrates that either the jury or any one juror was biased due to exposure to a news story or the information possibly shared by McDonald.  This is not a case of undue influence by pervasive media nor is it a case involving prejudicial extrinsic evidence.  As stated above, the jury need not "be totally ignorant of the facts and issues involved."  Murphy, 421 U.S. at 799-800.  Assuming for the sake of the argument that McDonald had indeed read a newspaper article concerning the bank robbery, the only information Lay can show McDonald gleaned from the article was that a bank was robbed and that the perpetrators were a father and son. Id. at 25.  That information was revealed in open court by the time of opening statements. Moreover, these facts were established at trial through properly admitted evidence.  There is no record evidence that would permit the Court to infer prejudice or harm from McDonald having read a newspaper article relating to this case or having discussed the few details he recalled with another juror.

Lay, relying upon a Ninth Circuit case, United States v. Keating, 147 F.3d 895, 901 (9th Cir. 1998), also complains that McDonald became an unsworn witness within the meaning of the Confrontation Clause.  (Dkt. # 18 at 175).[13]  This case is easily distinguished from Keating.  In Keating, during the course of the trial, at least one juror learned of, and several jurors discussed, the defendant's prior state conviction which was not a part of the trial record.  Keating, 147 F.3d at 901. The circuit court found that jurors who communicated the information testified against Keating in

---

[13]     Lay cites Crawford v. Washington, 541 U.S. 36 (2004), for the proposition that denial of a confrontation right requires reversal.

64

violation of his Sixth Amendment confrontation rights.  Id.  The Ninth Circuit distinguished such a case from a "pretrial publicity case" in that those cases do not involve midtrial exposure to extrinsic evidence, nor do those cases involve jurors discussing inadmissible evidence.  Id.  This case is more akin to the "pretrial publicity cases" discussed in Keating.  Here, as discussed above, one juror *may* have read an article *prior to trial* and may have discussed with another juror simple, undisputed facts that were later properly admitted into evidence.  See M. Trans. 12/1 and 15/05 at 25.  Based on the facts of this case, Lay's right to confront witnesses against him was not implicated.[14]  Furthermore, even if the Court assumes that a Confrontation Clause violation occurred, because of the minimal nature of the information allegedly conveyed by McDonald to only one other juror, Lay has not demonstrated that any resulting Confrontation Clause violation had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); see also Matthews v. Workman, 577 F.3d 1175, 1181 (10th Cir. 2009) (applying Brecht harmless error standard in a habeas case involving juror misconduct).

This Court finds that the OCCA's determination that Lay was not prejudiced by juror misconduct based on the trial court's factual findings at the hearing on the motion for new trial was not unreasonable in light of the evidence presented, nor was it contrary to, or an unreasonable application of, any clearly established rule of federal law as determined by the United States Supreme Court.  Accordingly, Lay is not entitled to habeas relief on claim 8.  In addition, Lay has

---

[14]     As in claim 7, Lay also alleges that he might be entitled to relief pursuant to McDonough Power Equipment, Inc., 464 U.S. 548 (see discussion of claim 7, supra), as a result of potential juror dishonesty on the part of McDonald regarding newspaper accounts. (Dkt. # 18 at 176).  This argument is rejected.  The record does not reflect that McDonald was dishonest.

not demonstrated the need for discovery with regard to this claim. For that reason, his motion for discovery is denied.

## IX. Inadequate voir dire by trial court

In claim 9, Lay alleges, as he did on direct appeal, that it was error for the trial court to not ask potential jurors if they knew the potential witnesses in the case. See Dkt. # 18 at 178. As a result of the error, Lay asserts that a biased juror, McDonald, was allowed to serve on the jury despite having "had a past relationship with Tammy Lay." Id. at 178-79. Lay raised this claim on direct appeal where it was rejected by the OCCA, as follows:

> The trial court has discretion over the manner and method of *voir dire*. Moreover, it is trial counsel's responsibility to examine prospective jurors and discover any facts that may affect their qualifications to serve. Lay had the opportunity to examine the jurors, including asking them if they knew the potential witnesses but failed to do so. Here, Lay is trying to shift the responsibility to the trial court for his own failures as his own *pro se* counsel. Lay has not shown that the trial court denied him a substantial right or that he was prejudiced by the trial court's method of jury selection.

Lay, 179 P.3d at 621-22 (footnotes omitted).

Lay provides a recap of evidence produced at the hearing on his motion for new trial, including that the relationship between McDonald and Tammy "involved numerous encounters at a local Gentleman's Club and numerous phone calls, wherein Juror McDonald propositioned witness Tammy Lay for sex." (Dkt. # 18 at 179). Lay claims that the trial court's failure to question the potential jurors about their knowledge of the witnesses affected his decisions with regard to peremptory challenges resulting in a violation of his Sixth Amendment right to an impartial and fair trial. Id. Lay further claims that, because he was allowed to proceed pro se, all aspects of his trial should be reviewed under the Eighth Amendment to insure that the death sentence was not imposed under sentencing procedures that created "'a substantial risk that it [was being] inflicted in an

66

arbitrary and capricious manner.'" Id. at 180-81 (quoting Gregg v. Georgia, 428 U.S. 153, 188 (1976)). Lay concludes by arguing that the OCCA's finding that any inadequacy in the voir dire was Lay's fault is clearly unreasonable and contrary to the law. Id. at 181.

Respondent responds by claiming that, while Lay's Sixth Amendment claim was presented to the OCCA on direct appeal, he has never presented his Eighth Amendment claim to the OCCA and that claim is unexhausted. (Dkt. # 39 at 90). For that reason, Respondent argues that the Eighth Amendment claim should be denied as procedurally barred. Id. As to the Sixth Amendment claim, Respondent asserts that "[i]n the absence of a showing that McDonald lied during voir dire or intentionally misled the court during trial and the absence of any showing that Lay was prejudiced by [McDonald's] limited relationship with Tammy, Lay has failed to demonstrate that the OCCA's rejection of his Sixth Amendment claim was an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts." Id. at 93.

In reply, Lay does not contest Respondent's position that his Eighth Amendment claim is unexhausted and procedurally barred. See Dkt. # 47 at 81-83. The Court agrees with Respondent and finds that the Eighth Amendment claim is procedurally barred. However, as to the Sixth Amendment claim, Lay asserts that "Respondent's claim that failing to advise the jury of the witnesses' names prior to trial had no prejudicial effect on Wade Lay's trial is misplaced," and that the OCCA's rejection of this claim was "clearly an unreasonable determination of the relevant facts and an unreasonable application of federal law." Id. at 82, 83.

There is no clearly established federal law holding that in a capital case the trial court must inform the jury of the names of the potential witnesses during voir dire, whether the defendant has

counsel or not.[15]  The difficulty with Lay's claim is that the connection between the failure of the trial court to ask the jurors about the names of potential witnesses and Lay's statutory right to exercise peremptory challenges is too attenuated to give serious consideration.  As discussed above with regard to claims 7 and 8, Lay has not shown that McDonald was biased at the time of voir dire due to any relationship with Tammy Lay.  It should be noted that, prior to trial, in response to a request from Chris's counsel, the court advised the parties that it would normally introduce the parties and counsel to the jury, summarize the Information, read the name of the victim, but that it did not normally read all the witnesses to the jury.  (M. Trans. 9/15/05 at 34).  Neither Lay nor Chris's counsel objected to this procedure.  Neither defendant questioned the potential jurors regarding the identity of any potential witnesses.

Lay has not demonstrated that the OCCA's adjudication of this claim was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented" on direct appeal.  28 U.S.C. § 2254(d).  Habeas corpus relief is denied on claim 9.

## X.  Ineffective assistance of prior counsel

As his tenth proposition of error, Lay complains that his direct appeal counsel provided ineffective assistance of counsel when he failed to (1) argue that Lay's right to confront witnesses

---

[15]    The OCCA has stated that "[i]t is the duty of defense counsel to investigate on voir dire those matters, which affect a venireman's qualifications to sit as a juror." Warner v. State, 144 P.3d 838, 859 (Okla. Crim. App. 2006) (citing Peters v. State, 712 P.2d 799, 801 (Okla. Crim. App. 1986)).  "That which would have been disclosed by reasonable diligence during voir dire cannot later be made grounds with which to attack the verdict."  Id.

against him was violated by the introduction of Dr. Revell's testimony through a surrogate medical examiner, (2) argue that Lay was incompetent based on counsel's erroneous belief that such claims should be raised in an application for post-conviction relief, (3) argue that the lack of mitigation evidence at trial prejudiced Lay and resulted from allowing an incompetent defendant to proceed pro se, (4) argue that the trial court failed to apprise the jury of the limited use of victim impact testimony, (5) file a petition for writ of certiorari at the United States Supreme Court, and (6) argue for an instruction limiting the use of the mitigating evidence for Chris Lay as aggravating evidence against Wade Lay. (Dkt. # 18 at 182-83). Lay claims that "[d]irect appeal counsel's performance as to the above claims was unreasonable, and the Oklahoma Court's conclusion that there was no prejudice from ineffective performance is neither reasonably based upon established federal law or reasonable from the facts within the state record." Id. at 183.

Respondent states that Lay exhausted subclaims 2 and 3 when he raised those claims of ineffective assistance of appellate counsel in his first application for post-conviction relief. As to subclaims 1, 4, 5, and 6, Respondent asserts that those claims of ineffective assistance of appellate counsel have not been presented to the OCCA and are unexhausted and procedurally barred. However, as noted in his reply (Dkt. # 47 at 85, 91), Lay raised subclaim 4 in his first application for post-conviction relief, and subclaims 1, 5, and 6 in his second application for post-conviction relief, filed May 4, 2010. After Respondent filed the response in this case, the OCCA ruled on Lay's second application for post-conviction relief and found that, because the claims of ineffective assistance of prior counsel could have been but were not raised in the first application for post-conviction relief and were untimely under the post-conviction statute, the claims would not be considered on the merits.

## A. Procedural bar

Claims of ineffective assistance of appellate counsel raised in the second application for post-conviction relief are procedurally barred. In adjudicating Lay's second application for post-conviction relief, the OCCA, citing Okla. Stat. tit. 22, § 1089(D)(8), (9) (2006), and Rule 9.7(G)(3), Rules of the Oklahoma Court of Criminal Appeals, Okla. Stat. tit. 22, Ch. 18, App. (2002), found as follows:

> We cannot consider the merits of a subsequent application for post-conviction relief "unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in a timely original application or in a previously considered application filed under this section, because the factual or legal basis for the claim was unavailable." A legal basis is unavailable if it (a) either was not previously recognized or could not have been reasonably formulated from a decision of an appellate court, or (b) is a new rule of constitutional law given retroactive effect by an appellate court. A factual basis is unavailable if it could not be previously ascertained through the exercise of reasonable diligence.

> Other procedural bars exist. We will not consider a subsequent application for post-conviction relief "unless it is filed within sixty (60) days from the date the previously unavailable legal or factual basis serving as the basis for a new issue is announced or discovered." Finally, in considering a subsequent application, we cannot grant relief unless the underlying facts, if proven and viewed in light of the evidence as a whole, would establish by clear and convincing evidence that, but for the alleged error, no reasonable finder of fact would have convicted the petitioner or imposed a death sentence.

> . . . .

> In Proposition II Lay claims that previous appellate and post-conviction counsel were ineffective for failing to preserve and present meritorious issues, including: (a) the Confrontation Clause issue raised in Proposition I; (b) appellate counsel's failure to file a petition for writ of certiorari to the United States Supreme Court; (c) appellate counsel's failure to raise the extra-record issues surrounding the Confrontation Clause claim in Proposition I and to investigate the testifying medical examiner's conclusions; (d) appellate counsel's failure to raise competency issues; (e) appellate counsel's failure to investigate and present mitigating evidence concerning Lay's competency issues and ability to represent himself; and (f) appellate counsel's failure to raise claims of errors in instruction at trial on victim

impact evidence and mitigating circumstances. The factual bases for all these claims were available more than sixty days before this Application was filed. They are not timely under the post-conviction statute and we do not consider them on their merits.

Lay claims that, given appellate counsel's failing, post-conviction counsel had the duty to raise the issues outlined above but failed to do so. Again, any claim of ineffective assistance of post-conviction counsel has its factual basis in acts and omission[s] which were available more than sixty days before this Application was filed. We do not consider these untimely claims on their merits.

(Opinion Denying Subsequent Post-Conviction Application, entered Oct. 13, 2010, in Case No. PCD-2010-407, at 2-5 (footnotes omitted)).

The Tenth Circuit has recognized that "Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground" barring federal habeas corpus review. Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999). The Tenth Circuit has also affirmed the adequacy of the Oklahoma procedural bar as applied to claims that could have been but were not raised in an initial state application for post-conviction review. Cannon, 259 F.3d at 1266 (citing Thomas v. Gibson, 218 F.3d 1213, 1221-22 (10th Cir. 2000); Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000); Smallwood v. Gibson, 191 F.3d 1257, 1267-69 (10th Cir. 1999); Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998)).

Applying the principles of procedural bar to this case, the Court concludes that Lay's claims of ineffective assistance of appellate counsel first raised in his second application for post-conviction relief are procedurally barred. The OCCA's procedural bar is based on an "independent" ground because state law, including Okla. Stat. tit. 22, § 1089(D)(8), (9), provides "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. As to the adequacy of the procedural bar imposed on Lay's claims of ineffective assistance of appellate counsel, the Tenth Circuit has recognized that

71

a procedural bar imposed on a claim brought in a second application for post-conviction relief that could have been but was not raised in a previous application is adequate to preclude habeas review of ineffective assistance of counsel claims. Smallwood, 191 F.3d at 1268 (citing Moore, 153 F.3d at 1097). Thus, the procedural bar imposed by the OCCA on Lay's ineffective assistance of appellate counsel claims first raised in his second application for post-conviction relief, i.e., subclaims 1, 5, and 6, is adequate to preclude federal review. Sherrill, 184 F.3d at 1175.

To overcome the procedural bar, Lay must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Wainwright v. Sykes, 433 U.S. 72, 91 (1977). Lay fails to make the necessary showing. Therefore, his claims of ineffective assistance of appellate counsel, identified above as subclaims 1, 5, and 6, and first raised in his second application for post-conviction relief, are denied as procedurally barred.

### B.  Claims raised in first application for post-conviction relief

As discussed with respect to habeas claims 2 above and 11 below, the OCCA adjudicated Lay's subclaims 2, 3, and 4 of ineffective assistance of appellate counsel as part of Lay's first application for post-conviction relief. In denying post-conviction relief on subclaims 2 and 3, the OCCA found that Lay had "failed to present this Court with sufficient evidence of his incompetence at trial. As a result, we find both that this claim is procedurally barred and that appellate counsel was not ineffective for failing to raise an unmeritorious issue on direct appeal." (Opinion Denying Application for Post-Conviction Relief, entered Sept. 26, 2008, in Case No. PCD-2006-1013, at 3). As to subclaim 4, arising from an alleged instructional error, the OCCA found as follows:

[T]o establish ineffective assistance of counsel on appeal, Lay must prove that the result of his appeal would have differed. Lay cannot meet this test. The absence of the limiting instruction was not prejudicial as it had no affect [sic] on the outcome of the trial in general or Lay's sentence in specific. Even had the argument been raised on direct appeal, it would not have changed the result. This argument is denied.

Id. at 4.

Lay is not entitled to habeas relief on these claims of ineffective assistance of appellate counsel unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984). When assessing claims of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. 668). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).

A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin, 275 F.3d at 1235; Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. If Lay is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Pinholster, 131 S. Ct. at 1403 (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). In Cargle v. Mullin, 317 F.3d 1196 (10th Cir. 2003), the Tenth Circuit directed that:

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Id. at 1202 (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998).

The Court has determined above that the trial record does not support Lay's claim of incompetence at the time of trial. Also, the Court finds below that Lay's claim that his due process

rights were violated by the trial court's failure to give an instruction limiting the use of victim impact testimony is procedurally barred and that ineffective assistance of appellate counsel cannot serve as cause to overcome the procedural bar because the claim lacks merit. Under the "doubly deferential" standard applicable to ineffective assistance of counsel claims, <u>Pinholster</u>, 131 S. Ct. at 1403, the Court finds that Lay fails to carry his burden of demonstrating that the OCCA unreasonably applied <u>Strickland</u>. For that reason, as discussed herein with respect to habeas claims 2 and 11, Lay is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d), as to subclaims 2, 3, and 4 of ineffective assistance of appellate counsel.

## XI. Improper use of victim impact testimony

In claim 11, Lay alleges that his Eighth and Fourteenth Amendment rights to a fair sentencing proceeding were violated based on the introduction of improper victim impact testimony. (Dkt. # 18 at 185). Lay claims that the victim impact evidence presented at his trial exceeded the scope contemplated by the Eighth and Fourteenth Amendments when the victim's sisters "openly wept as they recounted their brother's life; the promises made to him about the raising of his daughter; and the promises made to their mother that they would not allow anything to ever happen to him." (Dkt. # 18 at 186-87). Lay also asserts that the error in admission of the victim impact testimony was compounded by the lack of "evidence regarding Mr. Lay's troubled background." <u>Id.</u> at 188. As a result, the sentencing proceeding was impermissibly "unbalanced" and "unreliable," in violation of the Eighth Amendment. <u>Id.</u> at 188-89. Furthermore, Lay also complains that the trial court failed to provide OUJI-CR 9-45, the instruction for victim impact evidence in capital cases, in violation of his right to due process under the Fourteenth Amendment. <u>Id.</u> at 190. While recognizing that a claim challenging the lack of a limiting instruction was not raised on direct

appeal, Lay alleges ineffective assistance of appellate counsel as cause for the omission of the claim. Id. at 190-91.

Respondent argues that the only exhausted claim in ground 11 is the claim that victim impact testimony introduced at trial violated Oklahoma law and that the remaining claims are unexhausted and procedurally barred. (Dkt. # 39 at 101-02). In reply, Lay contends that because the victim impact testimony surpassed statutory and Constitutional constraints, he was denied a fair sentencing hearing because "the death sentence ultimately rendered was based on emotion – not a well reasoned judgment." (Dkt. # 47 at 94).

## A.  Merits of Eighth Amendment claim

On direct appeal, Lay challenged a portion of the testimony of the victim's sister, Tona Collier, and argued that both Collier and the victim's other sister, Kimilla Tryon, displayed improper emotion during their testimony. The OCCA rejected the claims, finding as follows:

> Lay specifically argues that Collier exceeded the bounds of appropriate victim impact testimony when she testified that: "I made a promise to my mother before she died to always be there for Kenny and watch out for him. I feel so much like I failed my mother." Lay did not object to this testimony. Regardless, there was no error. Collier's statement was proper because it concerned the specific emotional burden that her brother's death placed on her.

> It does appear that the victim impact witnesses cried while testifying. Lay did not object to their testimony or ask for a recess to allow either witness to regain composure. More importantly, their display of emotion does not appear to have interfered with the recitation of their statements. Both witnesses' statements were in compliance with the law as they were brief, proper, and neither unduly emotional or prejudicial. As a result, we find no error in the victim impact testimony.

Lay, 179 P.3d at 623 (footnotes omitted).

In 1992, Oklahoma enacted legislation permitting victim impact evidence. See Okla. Stat. tit. 21, § 701.10(C) (1992),[16] and Okla. Stat tit. 22, §§ 984, 984.1 (1999).[17] If a state chooses to allow the admission of victim impact evidence, the Eighth Amendment erects no per se bar. The established Supreme Court precedent involving victim impact statements is set forth in Payne v. Tennessee, 501 U.S. 808 (1991). Hain v. Gibson, 287 F.3d 1224, 1238 (10th Cir. 2002). The Supreme Court in Payne held that "the only constitutional limitation on such evidence is if it 'is so unduly prejudicial that it renders the trial fundamentally unfair.' In such an event, the Court indicated, 'the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" Id. (quoting Payne, 501 U.S. at 825). The prohibition against the victim's family giving their "characterizations and opinions about the crime, the defendant, and the appropriate sentence" remains in place. Id. at 1238-39 (quoting Booth v. Maryland, 482 U.S. 496, 502 (1987), overruled in part by Payne, 501 U.S. at 825); see also Dodd v. Trammell, 753 F.3d 971, 996 (10th Cir. 2013). The Supreme Court in Payne specifically outlined why victim impact evidence was relevant to a capital jury's sentencing decision:

> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the

---

16      Section 701.10(C) of Title 21 provides, "[i]n the sentencing proceeding, . . . the state may introduce evidence about the victim and about the impact of the murder on the family of the victim."

17      Section 984 of Title 22, in effect at the time of Lay's crime and trial, defines "victim impact statements" as "information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." Under section 984.1, copies of the victim impact statements are to be made available to the parties.

defendant. The State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.

Payne, 501 U.S. at 825 (citation omitted) (internal quotation marks omitted).

To the extent Lay seeks habeas corpus relief based on a violation of state law, he is not entitled to relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). Furthermore, the victim impact evidence introduced at Lay's trial was not "'so unduly prejudicial that it render[ed] the trial fundamentally unfair.'" See Hain, 287 F.3d at 1238 (quoting Payne, 501 U.S. at 825). As noted by the OCCA, the record reflects that the victim's sisters cried while reading their prepared statements to the jury. (Tr. Trans. Vol. VI at 1108). However, it does not appear that their emotions interfered with their ability to read their statements. As they read their statements, the victim's sisters described the victim as an individual and told of the specific harm and unique loss they suffered emotionally as a result of the murder. The victim's sisters' statements were not lengthy – the testimony was limited to descriptions of the victim and the impact of the murder on the victim's family. See Payne, 501 U.S. at 827. The OCCA's determination was not contrary to, or an unreasonable application of, Payne. Habeas relief on claim 11 is denied.

**B.** **Instructional Error**

Lay also argues that the trial court's failure to give OUJI-CR 2d 9-45 (limiting the consideration of victim impact evidence "to a moral inquiry into the culpability of the defendant, not an emotional response to the evidence") violated his due process rights, citing Hicks, 447 U.S. 343. (Dkt. # 18 at 189-92). The instruction explains, inter alia, "[y]ou may consider this victim

impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstance has been proven beyond a reasonable doubt by evidence independent from the victim impact evidence, and find that the aggravating circumstance(s) found outweigh the finding of one or more mitigating circumstances." OUJI-CR 2d 9-45. In response to the petition, Respondent asserts that this claim is unexhausted. (Dkt. # 39 at 101). Respondent is incorrect. Lay raised this issue in his first post-conviction proceeding, see Application for Post Conviction Relief - Death Penalty, No. PCD-2006-1013, at 32-35, and the OCCA found that the claim could have been but was not raised on direct appeal and, as a result, denied the claim as procedurally barred. See Opinion Denying Application for Post-Conviction Relief, entered Sept. 26, 2008, in Case No. PCD-2006-1013, at 4.

The Court finds that the OCCA's procedural bar is both independent and adequate to preclude federal habeas corpus review. This Court "may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." Welch v. Workman, 639 F.3d 980, 992 (10th Cir. 2011).

In his reply, Lay attributes any "supposed failure" to raise portions of his claim to ineffective assistance of appellate counsel. (Dkt. # 47 at 93). In denying the first application for post-conviction relief, the OCCA denied relief on Lay's claim of ineffective assistance of appellate counsel for failing to challenge the lack of a limiting instruction, finding that the claim "would not have changed the result" of the direct appeal had the claim been raised. (Opinion Denying Application for Post-Conviction Relief, entered Sept. 26, 2008, in Case No. PCD-2006-1013, at 4). The Court agrees with the OCCA. Lay cannot establish that he was prejudiced by the trial court's

failure to give OUJI-CR 2d 9-45. Even had the jury received OUJI-CR 2d 9-45, it is not likely that the jury would have recommended a sentence less than death. As discussed above, Lay unapologetically declared war on the federal government. He introduced only limited mitigating evidence on his behalf, including testimony of his two daughters and his own testimony. The evidence supporting the three aggravating circumstances was ample. Lay cannot establish that the result of his appeal would have been different had appellate counsel raised a claim based on omission of the jury instruction. Thus, Lay's claim of ineffective assistance of appellate counsel lacks merit and cannot serve as "cause" to overcome the procedural bar.

Furthermore, Lay does not claim to be actually innocent of the crimes of which he was convicted. Therefore, he does not fall within the fundamental miscarriage of justice exception. The Court concludes that Lay's claim 11 challenge to the omission of the jury instruction limiting the use of victim impact evidence is procedurally barred and is denied on that basis.

## XII. Unreliable jury verdict as to two aggravating factors

In claim 12, Lay argues that the jury was given the wrong instruction with regard to determining the existence of aggravating circumstances (Dkt. # 18 at 193), and insufficient evidence was presented to support two of the aggravating circumstances, "'avoid arrest,' and 'great risk of death.'" Id. at 194.

### A. Instructional error

As to the jury instruction claim, Lay alleges that the trial judge failed to give the jury OUJI-CR (2d) 4-77 (providing the "reasonable hypothesis" standard for determining the existence of aggravating circumstances proven entirely or in part by circumstantial evidence). Id. at 193. In support of this claim, Lay again cites Hicks, 447 U.S. at 346, and argues he was "deprived of a life

and liberty protection afforded by Oklahoma law" as a result of the trial judge's failure to instruct the jury as to the appropriate standard.  Id. at 193-94.  He alleges that, "[u]nder the [reasonable hypothesis] standard, there exist reasonable hypotheses that obviate the finding of two of the aggravating circumstances, 'avoid arrest,' and 'great risk of death.' There was insufficient evidence as to these factors under any standard, but particularly so applying the appropriate reasonable hypothesis test."  Id.  Specifically, under the reasonable hypothesis test, Lay claims that no evidence supported a finding that he intended to harm or kill anyone other than the decedent, who was shooting at Lay and his son.  Id. at 195-96.  Lay argues that the OCCA unreasonably decided this claim with respect to the "great risk of death" aggravating circumstance by applying a theory of transferred intent.  Id. at 197.  According to Lay, "[a]lthough multiple shots were fired in this case, there is absolutely no indication Mr. Lay intended to place anyone else at great risk of death."  Id. As a result, insufficient evidence supported the "great risk of death to more than one person" aggravating circumstance.  Also, Lay argues that the OCCA unreasonably decided the claim with respect to the "avoid arrest" aggravating circumstance by "offering only a conclusory statement of intent bereft of specific factual support."  Id. at 198.

Respondent asserts that any claim relying on Hicks, 447 U.S. at 346, is unexhausted and procedurally barred.  (Dkt. # 39 at 105).  As to Lay's remaining challenges to the sufficiency of the evidence supporting the two aggravating circumstances, Respondent argues that the OCCA's adjudication was not unreasonable.  Id. at 106-112.

Lay replies that Respondent's exhaustion argument is misplaced because Lay's direct appeal argument included a citation to Mills v. Maryland, 486 U.S. 367, 376-77 (1988), and thus encompassed his due process argument.  (Dkt. # 47 at 97).  Lay also argues that had the OCCA

applied the reasonable hypothesis test, "there would have been insufficient evidence to support either aggravating circumstance of 'great risk of death' or 'avoiding arrest,'" and reasserts his challenge to the sufficiency of the evidence supporting the two aggravating circumstances.  Id. at 98, 99.  Lay also clarifies that he does not base this claim on state law grounds, and states that he "is seeking enforcement of his life and liberty Due Process interest in the reasonable hypothesis test pursuant [to] Hicks."  (Dkt. # 47 at 98).  Lay also relies on Rojem v. Gibson, 245 F.3d 1130, 1137 (10th Cir. 2001), for his argument that the trial court's failure to instruct on the "reasonable hypothesis" test deprived him of his Fourteenth Amendment right to due process.

This Court need not decide the exhaustion issue because, even if Lay's claim is unexhausted, the Court may deny relief on the merits of an unexhausted claim.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The OCCA denied relief on Lay's instructional error claim as raised on direct appeal, finding as follows:

> In Proposition VII, Lay claims that the trial court erred in failing to instruct the jury as required by OUJI-CR (2d) 4-77. This instruction requires that when the State relies in part, as here, on circumstantial evidence to prove the existence of the aggravating circumstances, "all of the facts and circumstances, taken together, must be inconsistent with any reasonable theory or conclusion other than the existence of the aggravating circumstances." The trial court modified this instruction for guilt/innocence determinations to conform to the holding of Easlick v. State. Easlick overruled years of settled law and abolished the "reasonable hypothesis" standard in the guilt/innocence instructions and on appellate review of sufficiency of the evidence claims. Easlick did not address OUJI-CR (2d) 4-77. As a result, the "reasonable hypothesis" instruction is still the required jury instruction for aggravating circumstances proven, entirely or in part, by circumstantial evidence.

> However, Lay failed to object to the instruction as modified, waiving all but plain error. There was no plain error as "when the evidence is both direct and circumstantial, it is not error to fail to give an instruction when none is requested."

Here, the evidence was clearly a combination of both direct and circumstantial evidence. Moreover, as indicated in Proposition XIII, all the aggravating circumstances were overwhelmingly proven beyond a reasonable doubt. As a result, this Proposition is denied.

Lay, 179 P.3d at 623 (footnotes omitted).

"The defendant . . . has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." Hicks, 447 U.S. at 346 (citation omitted). In Hicks, the petitioner was deprived of the statutory right to have his punishment fixed by jury. Id. at 345-46. Thus, the Supreme Court found that "[s]uch an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law." Id. at 346. In Rojem, the Tenth Circuit relied upon Hicks and affirmed the district court's finding that the trial court's failure to instruct the jury that it must find that the aggravating circumstances outweighed the mitigating circumstances violated the petitioner's right to due process. Rojem, 245 F.3d at 1138. The district court concluded that without a weighing instruction, the mitigating instruction suggested consideration of mitigating circumstances was optional. Id. at 1135-36. The Tenth Circuit explained that, "Oklahoma requires weighing by the fact finder, in this case the jury. Thus, the trial court deprived Rojem of his legitimate expectation under state law – he did not receive the assurance the death penalty would be imposed only if the aggravating circumstances outweighed the mitigating circumstances. . . . The State therefore deprived Rojem of his liberty without due process." Id. at 1138 (citations omitted).

In this case, unlike in Hicks and Rojem, Lay has not shown that he was deprived of a substantial and legitimate expectation under state law nor has he shown that he was deprived of his liberty by a jury acting outside of its statutory discretion. First, in light of the Easlick decision

discussed by the OCCA in Lay's direct appeal decision, Lay had no substantial and legitimate

expectation that his jury would be given the "reasonable hypothesis" instruction. As explained in

a subsequent OCCA decision:

> The Easlick decision did not address OUJI-CR(2d) 4-77, but the reasoning in Easlick
> makes it logical to apply to this second-stage instruction as well. In Easlick, the
> Court abandoned the "reasonable hypothesis" test to review appellate claims of
> insufficient evidence in cases based entirely on circumstantial evidence and adopted
> the standard for cases involving direct and circumstantial evidence to use in all future
> cases regardless of the type of evidence used to convict. Easlick, 2004 OK CR 21,
> ¶ 4, 90 P.3d at 557. The Easlick court reasoned that because the "reasonable
> hypothesis" test was "based on antiquated ideas concerning the value of
> circumstantial evidence and because we have a test that can be utilized in a universal
> manner, the 'reasonable hypothesis' test should meet its demise in this State in
> accord with the vast majority of jurisdictions." Easlick, 2004 OK CR 21, ¶ 15, 90
> P.3d at 559. To comport with the decision, the Court modified the uniform
> first-stage instruction on circumstantial evidence. Id., 2004 OK CR 21, ¶ 15 n. 3, 90
> P.3d at 559 n. 3. We find, based on the reasoning of Easlick and the facts of this
> case, that the trial court did not err in removing the "reasonable hypothesis" [sic] test
> in its modification of OUJI-CR(2d) 4-77.

Harmon v. State, 248 P.3d 918, 938-39 (Okla. Crim. App. 2011) (footnotes omitted). Second, even

accepting the OCCA's finding that the "'reasonable hypothesis' instruction was still the required

jury instruction for aggravating circumstances proven, entirely or in part, by circumstantial

evidence" at the time of Lay's trial and direct appeal, Lay has not shown that the failure to provide

this instruction resulted in a jury decision that was outside the scope of the jury's statutory

discretion. Lay has not shown that the "reasonable hypothesis" test was a part of Oklahoma's

statutory scheme, and hence, Hicks and Rojem are inapplicable.

Lay has failed to show that the OCCA's decision regarding the trial court's failure to give

the "reasonable hypothesis" instruction was contrary to, or an unreasonable application of, clearly

established federal law as determined by the Supreme Court, or was based on an unreasonable

determination of the facts. in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

## B. Sufficiency of the evidence

Lay argues that, under any standard, there was insufficient evidence supporting the "great risk of death" and "avoid arrest" aggravating circumstances. On direct appeal, the OCCA ruled as follows:

> We review the evidence in a light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support the aggravating circumstance beyond a reasonable doubt. Under this standard, the evidence here was sufficient.
>
> In determining the sufficiency of this aggravating circumstance, this Court reviews the evidence to determine if Lay created a great risk of death to another in close proximity in time and intent to the murder. Here, Lay and his son entered Midfirst Bank armed with guns in an attempt to rob the bank. They were confronted by the victim, an armed security guard, and a gun battle ensued. While Lay argues that he did not intend to shoot anyone other than the victim so the additional employees were not at risk of death, that unknown intent easily transfers to any unintended victims. As Lay concedes, the victim and five other bank employees were in the lobby area of bank when the guns were fired. All these employees were at a great risk of death at the time the shots were fired. This argument is denied.
>
> Lay argues that the evidence was insufficient to support the aggravating circumstance that the murder was committed to avoid or prevent lawful arrest or prosecution. We review the evidence of this aggravator for proof of a predicate crime, separate from the murder, from which the defendant is attempting to avoid arrest or prosecution. Here, Lay committed an attempted armed robbery of Midfirst Bank. Kenneth Anderson intervened and foiled the robbery. In the process, Anderson was shot and killed so that Lay and his son could escape the bank and avoid arrest. The evidence was sufficient to support this aggravating circumstance. This Proposition is denied.

Lay, 179 P.3d at 624 (footnotes omitted).

The Supreme Court has held that, with regard to the sufficiency of the evidence for aggravating circumstances, the standard of review set forth in Jackson v. Virginia – whether any

rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt – is applicable.[18] Lewis v. Jeffers, 497 U.S. 764, 781-82 (1990) (citing Jackson, 443 U.S. 307 (1979)); see also Lockett v. Trammel, 711 F.3d 1218, 1243 (10th Cir. 2013). Although aggravating circumstances are not "elements" of any offense, the standard of review for determining whether evidence is sufficient to convict is equally applicable to protecting a defendant's Eighth Amendment right to be free from the arbitrary and capricious imposition of the death penalty. Lewis, 497 U.S. at 782. Like factual findings, state court findings of aggravating circumstances often require a sentencer to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.; see also Boltz v. Mullin, 415 F.3d 1215, 1232 (10th Cir. 2005); Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002).

The Tenth Circuit has recognized that a federal habeas court's review under Jackson is "sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

---

[18]    This Court rejects any implication from Lay's argument that it should apply the "reasonable hypothesis" test in adjudicating Lay's sufficiency of the evidence claim on collateral review. Matthews, 577 F.3d at 1183 n.3 (rejecting habeas petitioner's claim that reasonable hypothesis test applied to sufficiency of evidence challenge to conviction and instead applying Jackson v. Virginia, 443 U.S. 307, 319 (10th Cir. 2009)); Romano v. Gibson, 239 F.3d 1156, 1164-65 (10th Cir. 2001) (applying Jackson standard instead of "reasonable hypothesis" standard applied by OCCA). The Supreme Court has expressly rejected the "reasonable hypothesis" standard, Holland v. United States, 348 U.S. 121, 139-40 (1954), instead opting for Jackson's rational trier of fact standard. Jackson, 443 U.S. at 318 n.9 (citing Holland, 348 U.S. at 140). Hence, the appropriate standard of review on habeas is supplied by Jackson. Romano, 239 F.3d at 1164-65. Because the AEPDA applies to the OCCA's rejection of this claim, the more specific issue is whether the OCCA's application of Jackson was reasonable. Id.

Boltz, 415 F.3d at 1232.  Additionally, federal review "is even more limited given that AEDPA governs this issue."  Id.  The Tenth Circuit has referred to the standard of review regarding evidentiary sufficiency challenges under AEDPA as "deference squared."  Young v. Sirmons, 486 F.3d 655, 666 n.3 (10th Cir. 2007).

Lay fails to show that the OCCA's adjudication of his sufficiency of the evidence claim was either contrary to, or an unreasonable application of, Jackson, or that it was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  "Sufficiency of the evidence on a habeas petition is a mixed question of law and fact.  We ask whether the facts are correct and whether the law was properly applied to the facts . . . . In light of the presumption of correctness afforded by 28 U.S.C. § 2254(e), we must defer to any determination of a factual issue by the state court."  Brown v. Sirmons, 515 F.3d 1072, 1089 (10th Cir. 2008) (quoting Maynard v. Boone, 468 F.3d 665, 673 (10th Cir. 2006)).  This Court looks to Oklahoma law in determining the substantive elements of the aggravating circumstance.  Id.

The OCCA's finding that sufficient evidence supported the "great risk of death" aggravating circumstance was wholly reasonable in light of the governing law and facts.  In order to establish the "great risk of death" aggravating circumstance under Oklahoma law, the defendant's acts must knowingly "create the risk of death to another which are in close proximity, in terms of time, location and intent to the act of killing itself."  Valdez v. State,  900 P.2d 363, 382 (Okla. Crim. App.1995).  The State presented evidence at trial that Lay and his son came to the bank armed with multiple loaded weapons.  Tr. Trans. Vol. IV at 532, 575, 577, 595, 612, 655-56.  Lay cannot deny the "knowingly" aspect of the aggravating circumstance as he was aware from previously casing the bank that multiple employees would be present.  When Lay engaged in a gun battle with the guard,

as far as Lay would have known, all of the employees present were exposed to the risk of being injured or killed. Even though some of the employees made it into the bank vault, they were not entirely free of risk from Lay's introduction of a loaded weapon into the bank and his willingness to use it during the attempted robbery. Moreover, at least two of the employees, Brian Easlon and Cindy Champlin, remained exposed outside the vault during the gun battle. The fact that neither were in fact struck by any bullets does not defeat the finding that Lay knowingly created a great risk of death to more than one person. A rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the great risk of death aggravating circumstance beyond a reasonable doubt. The OCCA's determination that the evidence was sufficient to establish the great risk of death aggravating circumstance was not an unreasonable application of Jackson.

In order to prove the avoid arrest or prosecution aggravating circumstance, the State must prove that the murder was committed in order to avoid arrest or prosecution for a predicate crime, separate from the murder itself. DeRosa v. State, 89 P.3d 1124, 1153 (Okla. Crim. App. 2004). Moreover, the intent may be proven by circumstantial evidence. Id. The evidence was overwhelming that Lay and his co-defendant took steps to avoid or prevent arrest or prosecution for the attempted armed robbery of the bank. In addition to carrying weapons sufficient to overcome any resistance to their demand for money, they wore masks to hide their identity and chose this particular bank because there was a wooded area behind the bank through which they could escape. Once they entered the bank and ordered "everybody on the floor," see Tr. Trans. Vol. IV at 532, the crime of attempted robbery was complete. It was after that time when Anderson, the victim, entered the lobby, apparently to prevent the robbery and to protect the bank employees. Whether shooting

Anderson was part of an attempt to complete a robbery or a response to Anderson's lawful use of lethal force, neither negated the fact that Lay shot Anderson also to avoid or prevent being arrested. Moreover, even after he had been shot, Lay still ran from the scene, rather than throw down his weapon and stay for medical treatment. A rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the avoid arrest aggravating circumstance beyond a reasonable doubt. The OCCA's determination that the evidence was sufficient to establish this aggravating circumstance was not an unreasonable application of Jackson.

Lay has not established that the OCCA's determination of this issue was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, or involved an unreasonable determination of the facts in light of evidence presented at trial. Lay is denied habeas relief on claim 12.

## XIII. Continuing threat aggravating circumstance is unconstitutionally vague and overbroad

In claim 13, Lay argues that Oklahoma's continuing threat aggravating circumstance is unconstitutionally vague and overbroad and permits jurors to make a factual finding on a probability standard instead of the requisite beyond a reasonable doubt standard. (Dkt. # 18 at 200-02). Specifically, Lay asserts that the continuing threat aggravating circumstance is (1) unconstitutionally vague and overbroad due to the OCCA's failure to show a predictable pattern of application of this aggravating circumstance; and (2) the use of a "probability standard" in the definition of the aggravating circumstance is contrary to the beyond a reasonable doubt standard of In re Winship, 397 U.S. 358, 364 (1970). On direct appeal, the OCCA simply noted the fact that it had previously found this aggravating circumstance constitutional and concluded Lay had failed to present any grounds to justify the court's coming to a different conclusion. Lay, 179 P.3d at 623-24.

The court also explicitly noted that it had rejected Lay's "probability" argument in Myers v. State, 133 P.3d 312, 333-34 (Okla. Crim. App. 2006). Lay,179 P.3d at 623 n.29. Respondent contends that the OCCA reasonably rejected Lay's attack on the continuing threat aggravating circumstance. (Dkt. # 39 at 112). Lay replies that "the aggravating circumstance as written is overly broad, and as such, violates the Eighth Amendment." (Dkt. # 47 at 100).

As to his first contention, Lay concedes that in Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997); Ross v. Ward, 165 F.3d 793 (10th Cir. 1999); and Castro v. Ward, 138 F.3d 810 (10th Cir. 1998), the Tenth Circuit has rejected his argument that the continuing threat aggravating circumstance is unconstitutionally vague and overbroad. (Dkt. # 18 at 200 n.67). More recently, the Tenth Circuit has again upheld this aggravating circumstance against charges it was vague and overbroad. Brown, 515 F.3d at 1092. Based on those decisions, the Court finds that Tenth Circuit precedent forecloses Lay's facial challenge to Oklahoma's continuing threat aggravating circumstance as unconstitutional.

Lay's second contention is that use of a probability standard rather than beyond a reasonable doubt violates the Due Process Clause and is an unreasonable application of In re Winship. Under Winship, any finding of fact entrusted to a jury must be proven beyond a reasonable doubt. Winship, 397 U.S. at 364. However, Lay confuses the standard of proof – beyond a reasonable doubt – with what must be proven: a probability that Lay would commit criminal acts of violence that would constitute a continuing threat to society. The jury was instructed that in order to find that the continuing threat aggravating circumstance exists, it must find beyond a reasonable doubt that "defendant's behavior has demonstrated a threat to society" and there was "a probability that this threat will continue to exist in the future." O.R. Vol. III at 411 (Supplemental Instruction No. 11);

see also O.R. Vol. III at 409  (Supplemental Instruction No. 9); O.R. Vol. III at 401 (Supplemental Instruction No. 1).  The requirement that this probability be proven beyond a reasonable doubt satisfies Winship.

Lay fails to show that the OCCA's decision on this issue was "contrary to, or involved unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  §2254(d)(1).  Thus, he is not entitled to habeas corpus relief on claim 13.

## XIV.  Insufficient instruction regarding findings necessary to impose the death penalty

As his final proposition of error, Lay complains that his jury was improperly instructed regarding imposition of the death penalty.  (Dkt. # 18 at 203).  Specifically, he complains that the trial court failed to instruct the jury that a sentence of death could be imposed only if the jury found both an aggravating circumstance and that aggravation outweighs mitigation beyond a reasonable doubt.  Id.  The OCCA found that "this issue has been addressed and denied.  Lay offers no compelling reason for this Court to reconsider this issue.  This Proposition is denied."  Lay, 179 P.3d at 623 (footnote omitted).

Lay contends that the failure to require a finding that aggravation outweighed mitigation beyond a reasonable doubt violated Lay's rights under the Sixth, Eighth, and Fourteenth Amendments.  (Dkt. # 18 at 204).  He argues that the OCCA's adjudication of this claim is contrary to Jones v. United States, 526 U.S. 227 (1999), Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002).  Id. at 208.  The constitutional error, according to Lay, is structural and not amenable to harmless error analysis.  Id. at 210.  And, even if the error were subject to harmless error review, the error was not harmless especially as his incompetence prevented him from presenting a complete case in mitigation.  Id. at 210-12.

Respondent claims that only Lay's Sixth Amendment claim is exhausted. (Dkt. # 39 at 117). Respondent also argues that, to the extent Lay challenges the weighing instruction on state law grounds, he is not entitled to habeas corpus relief. Id. at 118. Furthermore, Respondent argues that Lay's exhausted federal claim is precluded by the Tenth Circuit's ruling in Matthews, 577 F.3d at 1195 (finding the petitioner's "Apprendi argument is certainly barred on the merits by dint of our recent decision in United States v. Barrett, 496 F.3d 1079, 1107-08 (10th Cir. 2007)"). Id. at 119. In addition, Respondent argues that the OCCA's rejection of Lay's Ring claim was "wholly reasonable" and that Lay cannot demonstrate that the state court's opinion was contrary to, or an unreasonable application of, federal law because "[t]here is simply no clearly-established Federal law, articulated in Supreme Court case law, that the OCCA could unreasonably apply." Id. at 122-23. As to Lay's remaining claims, that the uniform weighing instruction also violated the Eighth Amendment and that the error is structural and not subject to harmless error analysis, Respondent contends that the claims are unexhausted and procedurally barred. Id. at 117-18.

Lay replies that Respondent's dissection of his claim "does not dictate a finding [that] any aspect is unexhausted." (Dkt. # 47 at 102). Lay also "recognizes the force" of the Tenth Circuit's decisions in Barrett and Matthews, but submits that the holdings in those cases "are contrary to United States Supreme Court law." Id. at 103.

The Court agrees with Respondent that Lay failed to exhaust his Eighth and Fourteenth Amendment claims, as well as his claim that this error is not subject to harmless error review. However, in light of the procedural posture of this case, it would be futile to require Lay to return to state court because his unexhausted claims would undoubtedly be subject to a procedural bar independent and adequate to prevent habeas corpus review. Therefore, there is no available state

corrective process, and consideration of the petition is not precluded by the exhaustion requirement of § 2254(b). Nonetheless, the Eighth and Fourteenth Amendment and harmless error claims are procedurally barred and are denied on that basis. Anderson v. Sirmons, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007) (describing application of "anticipatory procedural bar" to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it).[19]

As to Lay's Sixth Amendment claim, the OCCA rejected the claim on the merits, noting that it had previously addressed and rejected an identical claim in Torres v. State, 58 P.3d 214, 216 (Okla. Crim. App. 2002). Lay, 179 P.3d at 623. In Matthews, 577 F.3d at 1195, an Oklahoma capital habeas petitioner, relying on both Apprendi and Ring, argued that his jury should have been instructed to find that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. See id. Without this determination, Matthews argued his death sentence was invalid. Relying on its decision in Barrett, 496 F.3d at 1107, the Tenth Circuit found no merit to the claim. In particular, the court found that the jury's weighing of the factors in aggravation and mitigation "is not a finding of fact subject to Apprendi but a 'highly subjective, largely moral judgment regarding the punishment that a particular person deserves.'" Matthews, 577 F.3d at 1195 (quoting Barrett, 496 F.3d at 1107).

In accordance with Matthews, Lay fails to show that the OCCA's determination of this issue was an unreasonable application of federal law. Lay's request for habeas corpus relief on claim 14 is denied.

---

[19]    Lay's claim that anything in Wilson v. Workman, 577 F.3d 1284, 1294-95 (10th Cir. 2009) permits him to present unexhausted constitutional claims in his habeas proceedings is squarely rejected.

**XV.  Requests for an evidentiary hearing and for discovery**

In his petition (Dkt. # 18 at 213-27), Lay requests that he be allowed to engage in discovery (Dkt. # 18 at 213-22) and that the Court hold an evidentiary hearing on claims 1-5, and 10 (Id. at 223-28).  In addition, Lay filed a motion renewing and supplementing his request for an evidentiary hearing contained within his petition (Dkt. # 144).  In response to the motion, Respondent filed a motion to strike or, in the alternative, response to the renewed motion for evidentiary hearing (Dkt. # 147).

As the disposition of Lay's habeas corpus petition does not require reference to any materials beyond those that are available and currently part of the record, the Court finds that there is no need for an evidentiary hearing or discovery in this case.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  There are no disputed factual questions remaining that could possibly entitle Lay to habeas corpus relief.  He has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2), or any other governing principle of law.  Pinholster, 131 S. Ct. at 1399-1401 (2011); Williams, 529 U.S. 420 (2000).  Accordingly, Lay's requests for an evidentiary hearing and for discovery are denied.  Respondent's motion to strike is declared moot.

## CERTIFICATE OF APPEALABILITY

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The Court recognizes that "review of a death sentence is among the most serious examinations any court of law ever undertakes."  Brecheen, 41 F.3d at 1370. To be granted a certificate of appealability, however, Lay must demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner can satisfy that standard by

demonstrating that the issues raised are debatable among jurists of reason or that the questions deserve further proceedings. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). "Obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (citations omitted).

The Court reviewed each of Lay' propositions of error, and found none of the claims merited or warranted habeas relief. However, the Court has carefully considered each issue and finds that the following enumerated issues could be debated among jurists or could be resolved differently by another court:

Claims 2, 3, 4, 5, and 10: insofar as each raises an issue regarding Lay's competency and/or ineffective assistance of counsel.

Additionally, this Court finds that these same issues are adequate to deserve encouragement to proceed further. See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot, 463 U.S. at 893).

## CONCLUSION

After careful review of the record in this case, the Court concludes that Lay has not established that he is in custody in violation of the Constitution or laws of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. # 18) is **denied**.

2. Lay's motion for an evidentiary hearing (Dkt. # 144) is **denied**.

3. Respondent's motion to strike (Dkt. # 147) is **declared moot**.

4. Lays' motion "to reclaim deleted files stricken and removed from the public record and refile all files electronically to be in compliance with Fed. R. Civ. P. 5(d)(4) and remove ruling binding Petitioner to signatory approval of attorneys of record under Fed. R. Civ. P. 11" (Dkt. # 168) is **denied**.

5. A certificate of appealability is **granted** as to the claims specifically enumerated above.

6. A separate judgment shall be entered in this matter.

**DATED** this 7th day of October, 2015.

_Terence C Kern_

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**